Pedro Jesus FLORES, Petitioner,

v.

Gary JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.

Civil No. SA–96–CA–455.

United States District Court,
W.D. Texas,
San Antonio Division.

March 31, 1997.

Pedro J. Flores, Tennessee Colony, TX, pro se.

Jeremy T. Hartman, Texas Attorney General's Office, Habeas Corpus Division, Austin, TX, for Gary Johnson and Dan Morales.

## MEMORANDUM OPINION AND ORDER

BIERY, District Judge.

Petitioner Pedro Jesus Flores has filed this federal habeas corpus proceeding pursuant to Title 28 U.S.C. Section 2254 challenging his April, 1994 Guadalupe County conviction for burglary of a habitation and his enhanced sentence. For the reasons set forth below, petitioner's requests for federal habeas corpus relief will be denied.

### I. *Statement of the Case*

A. *Factual Background*

On December 3, 1993, petitioner Pedro Jesus Flores was indicted on a charge of

burglary of a habitation.[1] Petitioner's jury trial commenced on April 18, 1994, and on April 19, 1994, after only fifteen minutes of deliberation, petitioner's jury returned a verdict of guilty. The petitioner then entered a plea of "True" to the enhancement paragraph of the indictment against him, and after a brief punishment phase, petitioner's jury imposed a 75–year term of imprisonment. Petitioner filed a direct appeal, but in an unpublished opinion issued December 21, 1994, the Texas Fourth Court of Appeals affirmed petitioner's conviction and sentence.[2] Petitioner filed no petition for discretionary review of that decision with the Texas Court of Criminal Appeals.

However, on May 22, 1995, petitioner filed a state habeas corpus application in which he argued that (1) his trial counsel had rendered ineffective assistance by failing to (a) file any pretrial motions, (b) request an examining trial, (c) file a motion to quash the indictment against petitioner, (d) file a motion requesting unspecified discovery, (e) move for an instructed verdict at the conclusion of the State's case, (f) move to suppress unspecified evidence on unspecified grounds, (g) adequately investigate the case against petitioner, (h) take the depositions of prosecution witnesses, (i) spend adequate time preparing for trial, (j) seek out and obtain the testimony of unidentified potential defense witnesses, (k) explain the applicable law and facts to petitioner, (1) make unspecified objections to the testimony of unidentified prosecution witnesses, and (m) object to the failure of the state trial court to instruct the jury at the guilt-innocence phase of petitioner's trial regarding the defense of mistake of fact; (2) his appellate counsel rendered ineffective assistance by (a) raising only a single point of error on direct appeal and (b) failing to file a petition for discretionary review with the Texas Court of Criminal Appeals, and (3) the evidence was legally insufficient to support the jury's verdict of guilty. On August 23, 1995, the Texas Court of Criminal Appeals remanded petitioner's state habeas corpus application to the trial court for an evidentiary hearing. In an Order issued December 15, 1995, the state trial court (1) made factual findings that petitioner's trial counsel had reviewed offense reports and witness statements concerning the offense, discussed the facts and possible defenses with petitioner, and been advised by petitioner of no credible witnesses, and (2) concluded that petitioner's trial counsel had not rendered ineffective assistance.[3] On February 7, 1996, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application without written order based on the findings of the trial court.[4]

### B. *Procedural History*

On June 6, 1996, petitioner filed his federal habeas corpus petition in this Court challenging his April, 1994 Guadalupe County conviction for burglary of a habitation and asserting as grounds for relief some, but not all, of

---

1. The indictment against petitioner charged him with having entered a habitation without the effective consent of the owner thereof on November 17, 1993, with the intent to commit theft. An enhancement paragraph alleged that petitioner had been convicted of the offense of possession of a controlled substance on April 21, 1986.

2. *See Flores v. State,* No. 04–94–00247–CR (Tex. App.—San Antonio, December 21, 1994, no pet.) (not designated for publication). Petitioner raised only one point of error in his direct appeal, i.e., an argument that the state trial court had erred in submitting a jury instruction on the law of parties at the guilt-innocence phase of petitioner's trial. The Texas Fourth Court of Appeals rejected that claim on the merits determining that the state trial court had correctly instructed petitioner's jury and that the evidence fully supported the instruction.

3. A copy of the state trial court's findings of fact and conclusions of law, contained in its Order of December 15, 1995, appears among the state court papers relating to petitioner's first state habeas corpus proceeding at pp. 9–10 of the "Supplemental Transcript" from that proceeding. The state trial court judge relied upon the affidavits of the assistant district attorney who prosecuted petitioner and petitioner's defense counsel. The state trial court also noted that petitioner had presented that court with absolutely no affidavits or other evidence in support of his ineffective assistance of counsel claims. Significantly, the same state district judge who presided over petitioner's state court trial issued the findings of fact and conclusions of law in petitioner's first state habeas corpus proceeding.

4. *See Ex parte Flores,* No. 29,003–01 (Tex.Crim. App. February 7, 1996) (not designated for publication).

the claims he had included in his state habeas corpus application outlined above and presenting some new claims for relief.[5] More specifically, petitioner argued that (1) his trial counsel had rendered ineffective assistance by failing to (a) adequately prepare for trial, (b) interview unidentified defense and prosecution witnesses, (c) conduct unspecified pretrial investigation, (d) file any pretrial motions, (e) discover that petitioner was being tried as a party rather than as a principal, (f) object to the jury charge, (g) request a jury instruction on a "mistake of fact" defense, and (h) explain to petitioner how the facts of his case related to the applicable law; (2) his appellate counsel had rendered ineffective assistance by (a) presenting only one point of error on direct appeal, (b) providing only limited briefing on that point, and (c) failing to file a petition for discretionary review, and (3) there was insufficient evidence to support petitioner's conviction.[6]

On September 6, 1996, respondent filed his motion for summary judgment and argued therein that (1) petitioner's assertions of ineffective assistance by his trial counsel were unsupported by any specific factual allegations establishing that petitioner had been prejudiced by any deficiency in said counsel's performance, (2) petitioner had no constitutionally-protected right to the assistance of counsel for the purpose of pursuing discretionary review of his state criminal conviction, and (3) there was overwhelming evidence of the petitioner's complicity in the burglary, including eyewitness testimony that the petitioner had dropped off and picked up the two burglars after the burglary.[7]

On September 26, 1996, petitioner filed a pleading responding to respondent's motion for summary judgment in which petitioner argued for the first time that (1) his in-court identification by the eyewitness who testified she had seen petitioner driving the get-away car from the burglary had been tainted by the same witness's presentation by police at the scene where petitioner's vehicle had been stopped some twenty minutes after the burglary, (2) petitioner had been deprived of due process in connection with the state trial court's "paper hearing" during petitioner's state habeas corpus proceeding, (3) petitioner's trial counsel failed to request an examining trial, (4) because of inadequate trial preparation, petitioner's trial counsel had failed to discover the exculpatory testimony of petitioner's accomplice "Joe Ortega a/k/a Joe Manuel Castillo," and (5) petitioner's trial counsel should have requested a jury instruction on the "mistake of fact" defense based upon petitioner's assertion that the jewelry identified by the complainant as having been taken from her home was, in fact, play jewelry belonging to petitioner's daughter.[8] Petitioner attached to this pleading the affidavit of one "Joe M. Castillo" in which Mr. Castillo swore that: (1) he had borrowed the petitioner's vehicle on the date of the burglary, (2) he had committed the burglary in question, (3) after the burglary, he went and picked up the petitioner, who was a passenger in the car which he was driving at the time the police apprehended them, (4) the petitioner knew nothing about the burglary, and (5) none of the property recovered from the vehicle following his arrest was taken during the burglary.[9]

**5.** *See* docket entry no. 3.

**6.** Petitioner's assertion, as a part of his claim that his trial counsel had rendered ineffective assistance, that said counsel failed to "discover" prior to trial that the petitioner was being prosecuted under the law of parties was not included in petitioner's state habeas corpus application and has never been "fairly presented" to any state court.

**7.** *See* docket entry no. 8.

**8.** *See* docket entry no. 9. With the exception of petitioner's complaints about his trial counsel's failure to request an examining trial and to request a jury instruction on "mistake of fact," petitioner has never "fairly presented" any of these new contentions to any state court.

**9.** *See* Affidavit of Joe Castillo, attached as Exhibit A to Petitioner's Objections to Respondent Johnson's Motion for Summary Judgment, filed September 26, 1996, docket entry no. 9. Petitioner has never presented this same affidavit to any state court. Thus, as with several of his newly-asserted claims, petitioner has wholly failed to "fairly present" this new evidence to any state court.

## II. *Analysis and Authorities*

### A. *Antiterrorism and Effective Death Penalty Act of 1996*

■ On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"],[10] which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. Section 2254.[11] The Fifth Circuit has held that the new standard of review provisions of the AEDPA govern federal court review of all federal habeas corpus petitions filed by state prisoners, including those petitions pending as of the effective date of that enactment.[12] Under the AEDPA's new standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[13] With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

### B. *Failure to Exhaust State Remedies*

■ A fundamental prerequisite to federal habeas corpus relief under Title 28 U.S.C. Section 2254 is the exhaustion of all claims in state court under Section 2254 prior to requesting federal collateral relief.[14] A state prisoner must exhaust all available state court remedies before he can obtain federal habeas corpus relief unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights.[15] In order to exhaust, a petitioner must "fairly present" all of his claims to the state court.[16] The presentation of claims for the first time on discretionary review to the state's highest court does not constitute "fair presentation" for exhaustion purposes.[17] Full exhaustion of all claims presented is required before federal habeas corpus relief is available.[18]

■ A Texas inmate seeking federal habeas relief who, in directly appealing his state criminal conviction, has by-passed the Texas Court of Criminal Appeals will not be deemed to have exhausted his state remedies until he has raised his claims before the state's highest court through collateral re-

---

10. Pub.L. No. 104–132, 110 Stat. 1214 (1996).

11. *See Brown v. Cain*, 104 F.3d 744, 748–49 (5th Cir.1997); *Childress v. Johnson*, 103 F.3d 1221, 1224 (5th Cir.1997); *Moore v. Johnson*, 101 F.3d 1069, 1072–74 (5th Cir.1996); *Mata v. Johnson*, 99 F.3d 1261, 1265–66 (5th Cir.1996), *vacated in part and modified on other grounds*, 105 F.3d 209 (5th Cir.1997); *Herman v. Johnson*, 98 F.3d 171, 173 (5th Cir.1996), *cert. denied*, —— U.S. ——. 117 S.Ct. 1262, —— L.Ed.2d ——(1997); *Drinkard v. Johnson*, 97 F.3d 751, 756 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).

12. *See Brown v. Cain*, 104 F.3d at 748–49; *Lockhart v. Johnson*, 104 F.3d 54, 56–57 (5th Cir. 1997); *Childress v. Johnson*, 103 F.3d at 1224; *Moore v. Johnson*, 101 F.3d at 1072–73; *Mata v. Johnson*, 99 F.3d at 1266; *Drinkard v. Johnson*, 97 F.3d at 767.

13. *See Brown v. Cain*, 104 F.3d at 748–49; *Lockhart v. Johnson*, 104 F.3d at 56–57; *Childress v. Johnson*, 103 F.3d at 1224; *Moore v. Johnson*, 101 F.3d at 1072; *Mata v. Johnson*, 99 F.3d at 1267; *Drinkard v. Johnson*, 97 F.3d at 767.

14. *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 715, 133 L.Ed.2d 669 (1996).

15. *See Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir.1993); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir.1990), *cert. denied*, 501 U.S. 1235, 111 S.Ct. 2862, 115 L.Ed.2d 1029 (1991); *Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir.1989); *Richardson v. Procunier*, 762 F.2d 429, 430 (5th Cir. 1985).

16. *Id.; Duncan v. Henry*, 513 U.S. 364, ——, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995).

17. *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *Satterwhite v. Lynaugh*, 886 F.2d at 92.

18. *See Rose v. Lundy*, 455 U.S. 509, 518–22, 102 S.Ct. 1198, 1203–05, 71 L.Ed.2d 379 (1982); *Thomas v. Collins*, 919 F.2d at 334.

view provided by state habeas procedures.[19] Where a federal habeas corpus petitioner urges an issue that he failed to raise on direct appeal, he must first use available state collateral procedures to satisfy the exhaustion requirement.[20] However, if a Texas prisoner has obtained a ruling on the merits of a claim from an intermediate Texas appellate court and his petition for discretionary review has been denied by the Texas Court of Criminal Appeals, he need not file a subsequent state petition for habeas corpus relief urging the same claim in order to have exhausted state relief.[21]

In Texas, a state prisoner has available habeas corpus relief through Article 11.07 of the Texas Code of Criminal Procedure as a means of collaterally attacking his conviction or any improprieties with regard to his parole revocation.[22] The Texas courts routinely review complaints about defects in parole-revocation proceedings presented through applications for state habeas corpus relief.[23]

Presenting new legal or factual theories that have not been presented to the state courts in a federal habeas petition warrants dismissal of the petition.[24] Likewise, federal constitutional claims must have been presented to and considered by the state courts in a federal constitutional context; it is insufficient that all the facts underlying a federal claim were before the state court or that a somewhat similar state-law claim was made.[25] Finally, a habeas petitioner who presents material additional evidentiary support to the federal court that was not presented to the state courts has not exhausted state remedies with regard to that evidence.[26]

---

**19.** *Richardson v. Procunier,* 762 F.2d at 432; *see also Carter v. Estelle,* 677 F.2d 427, 442 n. 10 (5th Cir.1982), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983).

**20.** *Lowe v. Scott,* 48 F.3d 873, 875 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2278, 132 L.Ed.2d 282 (1995).

**21.** *See Myers v. Collins,* 919 F.2d 1074, 1076–77 (5th Cir.1990); *see also Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir.1995) (holding that Section 2254 does not require repetitious applications to state courts).

**22.** *See Ex parte Hall,* 696 S.W.2d 915, 917 (Tex. Crim.App.1985); *Ex parte Henderson,* 645 S.W.2d 469, 472 (Tex.Crim.App.1983).

**23.** *See, e.g., Ex parte Nelson,* 815 S.W.2d 737 (Tex.Crim.App.1991) (reviewing claim regarding alleged defects in parole-revocation proceeding); *Ex parte Canada,* 754 S.W.2d 660 (Tex.Crim.App. 1988) (reviewing claim of credit for time served pending parole-revocation hearing).

**24.** *See Sones v. Hargett,* 61 F.3d at 414–15 (holding the exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in his petition in the federal court); *Thomas v. Collins,* 919 F.2d at 334–35, (holding that presenting new legal theories based upon facts presented in state proceedings does not satisfy the exhaustion requirement); *Knox v. Butler,* 884 F.2d 849, 852 n. 7 (5th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1828, 108 L.Ed.2d 957 (1990) ("[O]n habeas review, federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as all factual allegations supporting those grounds. This rule extends to the evidence establishing the factual allegations themselves."); *Dispensa v. Lynaugh,* 847 F.2d 211, 217 (5th Cir.1988) (holding that a claim is not exhausted where a federal habeas petitioner presents the same legal claim to a federal court that he presented in state court but supports that claim with new factual allegations that he did not make in the state courts); *Joyner v. King,* 786 F.2d 1317, 1320 (5th Cir.1986), *cert. denied sub nom. Joyner v. Phelps,* 479 U.S. 1010, 107 S.Ct. 653, 93 L.Ed.2d 708 (1986); *Rodriguez v. McKaskle,* 724 F.2d 463, 466 (5th Cir.), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984) (holding that the exhaustion requirement is not normally satisfied if a petitioner presents new legal theories or entirely new factual claims); *Vela v. Estelle,* 708 F.2d 954, 958 (5th Cir.1983), *cert. denied,* 464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984); *Burns v. Estelle,* 695 F.2d 847, 849–50 (5th Cir.1983) (holding that where a petitioner asserted a claim of ineffective assistance based upon certain facts in a state proceeding, a new claim of ineffective assistance based upon an entirely new set of facts had not been "exhausted").

**25.** *See Duncan v. Henry,* 513 U.S. at ——, 115 S.Ct. at 888; *Yohey v. Collins,* 985 F.2d 222, 226 (5th Cir.1993); *Minor v. Lucas,* 697 F.2d 697, 698 (5th Cir.1983).

**26.** *See Graham v. Johnson,* 94 F.3d 958, 968–69 (5th Cir.1996); *Knox v. Butler,* 884 F.2d at 852 n. 7 ("[O]n habeas review, federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as all factual allegations supporting those grounds. This rule extends to the evidence establishing the factual allegations themselves.").

■ The Supreme Court and Fifth Circuit Court of Appeals have directed the district courts to dismiss "mixed" petitions. i.e., those containing exhausted and unexhausted claims, for failure to exhaust available state remedies with regard to all of the claims for federal habeas relief.[27] Therefore, this Court, ordinarily, is required to dismiss federal habeas petitions that include unexhausted claims.[28] However, it is incumbent on a federal district court to independently examine the relevant pleading and state court records to determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state court proceedings before reviewing the merits of the petitioner's claim.[29] The reason for this treatment of the exhaustion requirement is that its genesis lies in the principles of comity and federalism that underlie our national judicial system.[30] The foregoing principles guide this Court's review of federal habeas petitions filed by state prisoners regardless of whether they are expressly asserted by the parties in a specific legal proceeding.

■ As explained above, petitioner has presented a number of new claims in the course of this federal habeas corpus proceeding which he has never presented to any state court. Included among these new claims are his assertions that (1) Gloria Luke's in-court identification of petitioner as the driver of the get-away car was somehow tainted when police drove Mrs. Luke to the location where the petitioner's vehicle had been stopped only twenty minutes after the burglary, (2) petitioner's trial counsel could have discovered the exculpatory testimony of Joe Castillo had counsel done a better job investigating the case against petitioner, and (3) petitioner's constitutional rights were violated by the state trial court's "paper hearing" conducted as a part of his state habeas

corpus proceeding. Likewise, petitioner has never presented any state court with the affidavit of "Joe Castillo" which he has presented to this Court. Under such circumstances, it is clear that petitioner has failed to "fairly present" any of these three claims or this new evidence to the Texas Court of Criminal Appeals, and therefore, petitioner has failed to exhaust available state remedies with regard to those claims and that new evidence. However, for the reasons explained at length hereinafter, this Court has determined that none of these conclusory unexhausted claims or "purported" new evidence warrants federal habeas corpus relief. In fact, these claims are unequivocally refuted by the record or operative law.

■ If it is perfectly clear that a federal habeas petitioner does not raise even arguable federal claims, both the state and federal courts will be well served by the federal district court addressing the merits of unexhausted claims.[31] For the reasons set forth below, petitioner's unexhausted claims and new evidence fail to present even an arguable basis for federal habeas corpus relief. The respondent has not moved for dismissal of petitioner's federal habeas corpus petition for want of exhaustion. Therefore, because the principles of comity and federalism which underlie the exhaustion doctrine will not be offended by this Court addressing the merits of all of petitioner's frivolous claims and "new" evidence herein, this Court will not dismiss petitioner's federal habeas corpus petition for lack of exhaustion.

C. *State Law Issues in Federal Habeas Corpus Proceedings.*

■ A state prisoner seeking federal court review of his conviction pursuant to Title 28 U.S.C. Section 2254 must assert a

27. *See Rose v. Lundy,* 455 U.S. at 518–22, 102 S.Ct. at 1203–05; *Sones v. Hargett,* 61 F.3d at 415; *Sterling v. Scott,* 57 F.3d at 453; *Burns v. Estelle,* 695 F.2d at 850–52.

28. *See Rose v. Lundy,* 455 U.S. at 518–22, 102 S.Ct. at 1203–05; *Sterling v. Scott,* 57 F.3d at 453; *Burns v. Estelle,* 695 F.2d at 850–52.

29. *See Granberry v. Greer,* 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987); *Graham v. Johnson,* 94 F.3d 958, 970 (5th Cir.1996).

30. *See Granberry v. Greer,* 481 U.S. at 134, 107 S.Ct. at 1675; *Graham v. Johnson,* 94 F.3d at 970.

31. *See Granberry v. Greer,* 481 U.S. at 135, 107 S.Ct. at 1675–76.

violation of a federal constitutional right.[32] Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also presented.[33] In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.[34] The question before a federal habeas corpus court is not whether the state court correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated.[35]

> When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*.[36]

Thus, the issue before this Court is not whether the Texas courts properly applied state-law principles during petitioner's trial or in affirming petitioner's conviction and sentence or in denying petitioner's state habeas corpus application, but whether petitioner's federal constitutional rights have been violated in this case. Thus, insofar as petitioner claims that his burglary conviction was based upon the state courts' failure to prop-

erly apply state-law principles, those assertions do not furnish a basis for federal habeas corpus relief.

### D. Ineffective Assistance By Trial Counsel

#### 1. The Assertions

Petitioner argues in his original petition that his trial counsel rendered ineffective assistance by failing to (1) adequately prepare for trial, (2) interview unidentified defense and prosecution witnesses, (3) conduct unspecified pretrial investigation, (4) file any pretrial motions, (5) discover that petitioner was being tried as a party rather than as a principal, (6) object to the jury charge on unspecified grounds, (7) request a jury instruction on a "mistake of fact" defense based on unspecified evidence, and (8) explain to petitioner how the facts of his case related to the applicable law.[37] In his response to respondent's motion for summary judgment, petitioner argues further this his trial counsel rendered ineffective assistance by failing to (9) request an examining trial, (10) discover the exculpatory testimony of Joe Ortega a/k/a Joe Castillo, and (11) request a jury instruction on "mistake of fact" based upon his assertion that the jewelry found in his wife's vehicle belonged to petitioner's daughter.[38]

**32.** *Lawrence v. Lensing,* 42 F.3d 255, 258 (5th Cir.1994); *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir.1993); *Lowery v. Collins,* 988 F.2d 1364, 1367 (5th Cir.1993).

**33.** *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–81, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984); *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir.1996), *petition for cert. filed* (U.S. Dec. 23, 1996) (No. 96–7332); *Pemberton v. Collins,* 991 F.2d 1218, 1223 (5th Cir.), *cert. denied* 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993); *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir.1988); *Rault v. Butler,* 826 F.2d 299, 302 n. 1 (5th Cir.), *cert. denied,* 483 U.S. 1042, 108 S.Ct. 14, 97 L.Ed.2d 803 (1987); *Neyland v. Blackburn,* 785 F.2d 1283, 1293 (5th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986).

**34.** "[F]ederal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn,* 780 F.2d 509, 513 (5th Cir.

1986); *accord Bridge v. Lynaugh,* 838 F.2d 770, 772 (5th Cir.1988). This Court does not review a state prisoner's federal habeas corpus petition to determine whether the state appellate courts correctly construed and applied state law. Federal habeas corpus relief does not lie for errors of state law. *See Estelle v. McGuire,* 502 U.S. at 67–68, 112 S.Ct. at 479–81; *Lewis v. Jeffers,* 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris,* 465 U.S. at 41, 104 S.Ct. at 874; *Pemberton v. Collins,* 991 F.2d at 1223; *Lavernia v. Lynaugh,* 845 F.2d at 496; *Rault v. Butler,* 826 F.2d at 302 n. 1; *Neyland v. Blackburn,* 785 F.2d at 1293.

**35.** *See Neyland v. Blackburn,* 785 F.2d 1283, 1289 (5th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986).

**36.** *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991).

**37.** *See* docket entry no. 3.

**38.** *See* docket entry no. 9.

## 2. Standard of Review

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in the case of *Strickland v. Washington:*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so seri-

ous as to deprive the defendant of a fair trial, a trial whose result is reliable.[39]

In order to establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness."[40] In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.[41] The courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight.[42] It is strongly presumed that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[43]

---

**39.** 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

**40.** *Darden v. Wainwright,* 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986); *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65; *Andrews v. Collins,* 21 F.3d 612, 621 (5th Cir.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995); *Duff–Smith v. Collins,* 973 F.2d 1175, 1182 (5th Cir.1992), *cert. denied,* 507 U.S. 1056, 113 S.Ct. 1958, 123 L.Ed.2d 661 (1993); *Black v. Collins,* 962 F.2d 394, 401 (5th Cir.), *cert. denied,* 504 U.S. 992, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992).

**41.** *See Strickland v. Washington,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66; *Belyeu v. Scott,* 67 F.3d 535, 538 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1438, 134 L.Ed.2d 559 (1996); *Loyd v. Whitley,* 977 F.2d 149, 156 (5th Cir.1992), *cert. denied,* 508 U.S. 911, 113 S.Ct. 2343, 124 L.Ed.2d 253 (1993); *Duff–Smith v. Collins,* 973 F.2d at 1182; *Drew v. Collins,* 964 F.2d 411, 422 (5th Cir.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 730 (1993); *Lincecum v. Collins,* 958 F.2d 1271, 1278 (5th Cir.), *cert. denied,* 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992); *Wilkerson v. Collins,* 950 F.2d 1054, 1064 (5th Cir.1992), *cert. denied,* 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *United States v. Smith,* 915 F.2d 959, 963 (5th Cir.1990); *Ellis v. Lynaugh,* 873 F.2d 830, 839 (5th Cir.), *cert. denied,* 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989); *Crockett v. McCotter,* 796 F.2d 787, 791 (5th Cir.), *cert. denied,* 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986). A federal habeas petitioner must carry the burden of demonstrating both counsel's deficient performance and resultant prejudice. *Burnett v. Collins,* 982 F.2d 922, 928 (5th Cir.1993); *Martin v. Maggio,* 711 F.2d 1273,

1279 (5th Cir.1983), *cert. denied,* 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984).

**42.** *See Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993); *Burger v. Kemp,* 483 U.S. 776, 789, 107 S.Ct. 3114, 3122, 97 L.Ed.2d 638 (1987); *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Gaudet,* 81 F.3d 585, 592 (5th Cir.1996); *Belyeu v. Scott,* 67 F.3d at 538; *Williams v. Scott,* 35 F.3d 159, 164 (5th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 959, 130 L.Ed.2d 901 (1995); *Williams v. Collins,* 16 F.3d 626, 631 (5th Cir.1994), *cert. denied,* 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); *Loyd v. Whitley,* 977 F.2d at 156; *Lincecum v. Collins,* 958 F.2d at 1278; *Wilkerson v. Collins,* 950 F.2d at 1064; *McInerney v. Puckett,* 919 F.2d 350, 353 (5th Cir.1990); *Ellis v. Lynaugh,* 873 F.2d at 839; *Green v. Lynaugh,* 868 F.2d 176, 178 (5th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 102, 107 L.Ed.2d 66 (1989); *Enriquez v. Procunier,* 752 F.2d 111, 114 (5th Cir.1984), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2658, 86 L.Ed.2d 274 (1985); *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983). The deficiency prong of *Strickland* is judged by counsel's conduct under the law existing at the time of the conduct. *Westley v. Johnson,* 83 F.3d 714, 723 (5th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 773, 136 L.Ed.2d 718 (1997) (citing *Lockhart v. Fretwell,* 506 U.S. at 372, 113 S.Ct. at 843).

**43.** *See Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. at 2066; *Duff–Smith v. Collins,* 973 F.2d at 1182; *Drew v. Collins,* 964 F.2d at 422; *Wilkerson v. Collins,* 950 F.2d at 1064–65; *Bates v. Blackburn,* 805 F.2d 569, 578 n. 7 (5th Cir. 1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987); *Martin v. McCotter,* 796

An attorney's strategic choices, usually based on information supplied by the defendant and from a thorough investigation of relevant facts and law, are virtually unchallengeable.[44] Counsel is required neither to advance every non-frivolous argument nor to investigate every conceivable matter inquiry into which could be classified as non-frivolous.[45]

■■■ The proper standard for evaluating counsel's performance under the Sixth Amendment is "reasonably effective assistance." [46] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." [47] "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." [48] In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [49] In addition, analysis of the second or "prejudice" prong of the *Strickland* test must include examination of whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair.[50] "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or

F.2d 813, 816 (5th Cir.1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987); *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987).

**44.** *See Boyle v. Johnson*, 93 F.3d 180, 187–88 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 968, 136 L.Ed.2d 853 (1997) (holding that an attorney's decision *not to pursue a mental health defense or to present mitigating evidence concerning the defendant's possible mental illness was reasonable where counsel was concerned that such testimony would not be viewed as mitigating by the jury and that the prosecution might respond to such testimony by putting on its own psychiatric testimony regarding the defendant's violent tendencies); West v. Johnson*, 92 F.3d 1385, 1406–09 (5th Cir.1996), *petition for cert. filed*, (U.S. Dec. 23, 1996) (No. 96–7332) (holding that a trial counsel's failure to conduct *further investigation into the defendant's head injury and psychological problems was reasonable where interviews with the defendant and the defendant's family failed to produce any helpful information); Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir.1994) (citing *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. at 2066); *Andrews v. Collins*, 21 F.3d at 623 (holding that counsel acted reasonably in failing to further pursue the defendant's mental capacity or background where counsel had no reason to believe that further investigation would be useful).

**45.** *See Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir.1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir.1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 97, 126 L.Ed.2d 64

(1993) ("The defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources."); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990) ("[C]ounsel is not required to make futile motions or objections."); *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir.1985) (holding that defense counsel is not required to investigate everyone whose name is mentioned by the defendant); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir.1984) ("Counsel is not required to engage in the filing of futile motions.")

**46.** *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064; *Bullock v. Whitley*, 53 F.3d 697, 700 (5th Cir.1995).

**47.** *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. at 2066.

**48.** *Strickland v. Washington*, 466 U.S. at 692, 104 S.Ct. at 2067.

**49.** 466 U.S. at 694, 104 S.Ct. at 2068; *see also Loyd v. Whitley*, 977 F.2d at 159; *Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); *Drew v. Collins*, 964 F.2d at 422; *Black v. Collins*, 962 F.2d at 401; *Smith v. Puckett*, 907 F.2d 581, 584–85 (5th Cir.1990), *cert. denied*, 498 U.S. 1033, 111 S.Ct. 694, 112 L.Ed.2d 685 (1991); *Crockett v. McCotter*, 796 F.2d 787, 793–94 (5th Cir.), *cert. denied*, 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986).

**50.** *See Lockhart v. Fretwell*, 506 U.S. 364, 368–73, 113 S.Ct. 838, 842–45, 122 L.Ed.2d 180 (1993); *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995); *Armstead v. Scott*,

procedural right to which the law entitles him." [51]

In summary, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. [52]

The two-part test of *Strickland v. Washington,* has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. Given the language of *Strickland* itself, the test applies to the conduct of counsel both in preparation for and at trial. [53] The test has been applied to challenges to guilty pleas based on allegations of ineffective assistance of counsel. [54] Because the *Strickland* opinion itself dealt

37 F.3d 202. 207 (5th Cir.1994), *cert. denied,* — U.S. —,115 S.Ct. 1709, 131 L.Ed.2d 570 (1995).

**51.** *Lockhart v. Fretwell,* 506 U.S. at 372, 113 S.Ct. at 844. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Westley v. Johnson,* 83 F.3d at 723 (citing *Lockhart v. Fretwell,* 506 U.S. at 372–73, 113 S.Ct. at 844–45).

**52.** *See Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *Darden v. Wainwright,* 477 U.S. at 184, 106 S.Ct. at 2473; *Williams v. Collins,* 16 F.3d at 631; *United States v. Bounds,* 943 F.2d 541, 544 (5th Cir.1991). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. *See Lockhart v. Fretwell,* 506 U.S. at 368–73, 113 S.Ct. at 842–45; *Armstead v. Scott,* 37 F.3d at 207.

**53.** *See, e.g., Martin v. McCotter,* 796 F.2d 813, 816–17 (5th Cir.1986), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987) (holding that the *Strickland* test applied to both the trial and sentencing phases of a criminal proceeding); *Nealy v. Cabana,* 764 F.2d 1173, 1178–80 (5th Cir.1985). An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. *Bryant v. Scott,* 28 F.3d 1411, 1415 (5th Cir.1994). However, in order to establish that counsel was rendered ineffective by virtue of a failure to investigate the case against a defendant or to discover and present evidence, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed, what evidence would have resulted from that investigation, and how such would have altered the outcome of the case. *See Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994); *Nelson v. Hargett,* 989 F.2d 847, 850 (5th Cir.1993); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir.1989); *Lockhart v. McCotter,* 782 F.2d 1275, 1282–83 (5th Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987); *Alexander v. McCotter,* 775 U.S. 595, 603 (5th Cir.1985); *Schwander v. Blackburn,* 750 F.2d

494, 499–500 (5th Cir.1985); *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir.1983).

Furthermore, when a trial counsel's decision not to pursue further investigation into a potential defense or into an area of potential mitigating evidence is based on investigation and consultation with the defendant which leads the attorney to believe that further investigation would be fruitless, that decision may not be challenged as unreasonable. *See Boyle v. Johnson,* 93 F.3d at 187–88; *West v. Johnson,* 92 F.3d at 1406–09; *Andrews v. Collins,* 21 F.3d at 623. The extent of an attorney's investigation into an area must be viewed in the context of the defendant's cooperation with the attorney's investigation. *See Randle v. Scott,* 43 F.3d 221, 225 (5th Cir.1995), *cert. denied,* — U.S. —, 115 S.Ct. 2259, 132 L.Ed.2d 265 (1995) (holding that trial counsel was not ineffective for failing to investigate the validity of the defendant's prior conviction where the defendant was aware that the prior conviction had been reversed but failed to disclose same to his counsel and instead, instructed his counsel to cease investigation into the matter so as to expedite the defendant's entry of a guilty plea).

**54.** *See Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 369–71, 88 L.Ed.2d 203 (1985); *Randle v. Scott,* 43 F.3d at 225; *Armstead v. Scott,* 37 F.3d at 206; *Theriot v. Whitley,* 18 F.3d 311, 313 (5th Cir.1994); *Nelson v. Hargett,* 989 F.2d 847, 850 (5th Cir.1993); *United States v. Bounds,* 943 F.2d 541, 544 (5th Cir.1991); *Carter v. Collins,* 918 F.2d 1198, 1200 (5th Cir.1990); *United States v. Smith,* 915 F.2d 959, 963 (5th Cir.1990); *Uresti v. Lynaugh,* 821 F.2d 1099, 1101 (5th Cir.1987). To demonstrate prejudice in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for the alleged errors of his attorney, he would not have pleaded guilty but would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. at 58–59, 106 S.Ct. at 369–71; *James v. Cain,* 56 F.3d 662, 667 (5th Cir.1995); *Randle v. Scott,* 43 F.3d at 225; *Armstead v. Scott,* 37 F.3d at 206; *Theriot v. Whitley,* 18 F.3d at 313; *Nelson v. Hargett,* 989 F.2d at 850; *United States v. Bounds,* 943 F.2d at 544; *Carter v. Collins,* 918 F.2d at 1200; *Czere v. Butler,* 833 F.2d 59, 63 (5th Cir.1987).

with a sentencing proceeding, the two-part test applies to sentencing proceedings.[55] The two-part *Strickland* test has also been applied to the performance of counsel on appeal.[56]

 Because a convicted defendant must satisfy *both* prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice under that test makes it unnecessary to examine the other prong.[57] Therefore, a failure to establish that counsel's performance fell below an objective standard of reasonableness avoids the need to consider the issue of prejudice.[58] It is also unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice.[59] Mere conclusory allegations in support of claims of ineffective assistance of counsel are insufficient, as a matter of law, to raise a constitutional issue.[60]

55. See *Burger v. Kemp*, 483 U.S. 776, 788–96, 107 S.Ct. 3114, 3122–26, 97 L.Ed.2d 638 (1987); *Belyeu v. Scott*, 67 F.3d at 540–42 (applying both prongs of the *Strickland* test to ineffective assistance claims regarding the sentencing phase of a capital murder trial); *Andrews v. Collins*, 21 F.3d at 623–25; *Williams v. Collins*, 16 F.3d at 631–32; *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir.1993); *Wilcher v. Hargett*, 978 F.2d 872, 877 (5th Cir.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993); *Cantu v. Collins*, 967 F.2d at 1016–17; *Drew v. Collins*, 964 F.2d at 422–23; *Black v. Collins*, 962 F.2d at 401–04; *Duhamel v. Collins*, 955 F.2d 962, 965–66 (5th Cir.1992); *Wilkerson v. Collins*, 950 F.2d at 1064–65; *United States v. Hoskins*, 910 F.2d 309, 310–11 (5th Cir.1990); *Bell v. Lynaugh*, 828 F.2d 1085, 1088 (5th Cir.1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987); *Crockett v. McCotter*, 796 F.2d 787, 791 n. 1 (5th Cir.), *cert. denied*, 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986).

To satisfy the prejudice prong of the *Strickland* test in the context of a non-capital sentencing proceeding, a defendant must establish a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly less harsh. See *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir.1995); *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994); *Spriggs v. Collins*, 993 F.2d at 87–88.

56. See *Andrews v. Collins*, 21 F.3d at 625; *Williams v. Collins*, 16 F.3d at 635; *Cantu v. Collins*, 967 F.2d at 1017; *Duhamel v. Collins*, 955 F.2d at 967–68; *Sharp v. Puckett*, 930 F.2d 450, 451 (5th Cir.1991); *Lofton v. Whitley*, 905 F.2d 885, 887–88 (5th Cir.1990); *McCoy v. Lynaugh*, 874 F.2d 954, 962–63 (5th Cir.1989); *Ellis v. Lynaugh*, 873 F.2d at 840; *Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir.), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). But see *Penson v. Ohio*, 488 U.S. 75, 86–89, 109 S.Ct. 346, 353–55, 102 L.Ed.2d 300 (1988) (holding that the prejudice prong of the *Strickland* test does not apply in cases where appellate counsel withdraws without filing the brief suggested in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)); *Salazar v. Johnson*, 96 F.3d 789, 791 (5th Cir.1996) (holding that when counsel's errors result in an actual or constructive denial of the assistance of counsel on appeal altogether, as when counsel's errors deny the defendant his right to appeal, the defendant need not prove prejudice under *Strickland*); *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir.1996) (holding the same); *United States v. Riascos*, 76 F.3d 93, 94 (5th Cir.1996) (holding that complete denial of counsel on appeal, whether actual or constructive, creates presumption of prejudice); *Moss v. Collins*, 963 F.2d 44, 47 (5th Cir.1992), *cert. denied*, 506 U.S. 1055, 113 S.Ct. 983, 122 L.Ed.2d 136 (1993) (holding that actual or constructive denial of counsel on appeal is legally presumed to result in prejudice).

57. See *Strickland v. Washington*, 466 U.S. at 700, 104 S.Ct. at 2071; *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir.1995); *Armstead v. Scott*, 37 F.3d at 210; *Spriggs v. Collins*, 993 F.2d at 87; *Black v. Collins*, 962 F.2d at 401; *United States v. Pierce*, 959 F.2d 1297, 1302 (5th Cir.), *cert. denied*, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992); *Buxton v. Lynaugh*, 879 F.2d 140, 142 (5th Cir.1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989); *Thomas v. Lynaugh*, 812 F.2d 225, 229 (5th Cir.1987), *cert. denied*, 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987); see also *Burnett v. Collins*, 982 F.2d at 928(holding that defendant bears the burden of proof on both prongs of the *Strickland* test).

58. See *United States v. Hoskins*, 910 F.2d at 311; *Thomas v. Lynaugh*, 812 F.2d at 229–30.

59. See *Black v. Collins*, 962 F.2d at 401; *United States v. Pierce*, 959 F.2d at 1302; *Carter v. Collins*, 918 F.2d at 1203; *Smith v. Puckett*, 907 F.2d at 584; *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987); *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir.1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987).

60. See *Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir.1994), *cert. denied*, 513 U.S. 1054, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994) (holding that a petitioner's speculative complaints of ineffective

### 3. *The Overwhelming Evidence at Trial*

 Before beginning analysis of the petitioner's claims of ineffective assistance by his trial counsel, this Court notes that if the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, the defendant's ineffective assistance claim must fail.[61]

At petitioner's trial, eyewitness Gloria Luke testified that (1) on the afternoon of the burglary of her neighbor's home, she was sitting on her front porch, (2) she saw two men walk up to the door of her neighbor's home and knock on the door, (3) she knew her neighbor, Alfonsia Garcia, was out-of-town that day, (4) the two men sat down at a picnic table in her neighbor's yard, played with a dog, and watched her watching them, (5) she went inside her home briefly and then returned to her porch only to find that the two men were no longer sitting at the picnic table, (6) she saw the petitioner driving a green, two-tone Ford automobile pull up to the back door of the Garcia home but then drive off shortly thereafter, (7) she then saw the two men she had seen earlier as they exited the Garcia home dragging a pillow case full of stuff, (8) the petitioner drove his green vehicle back to the Garcia home and picked up the two burglars, (9) she saw that a screen on the door at the Garcia's home had been torn, and she immediately called the police and described the get-away car she had seen picking up the two burglars, and (10) shortly thereafter, she accompanied the police and identified the occupants of the green vehicle she had seen earlier leaving the crime scene.[62]

Seguin Police Detective Juan Garcia testified at petitioner's trial that (1) on the date of the burglary, he heard the dispatcher give an alert regarding a possible burglary and a description of a two-tone green vehicle which he knew to belong to one Dianne Floss, the common law wife of petitioner, (2) within minutes of that dispatch, he spotted the vehicle, which he knew to be the only one in Seguin that matched the vehicle described in the dispatch, (3) he stopped the vehicle, (4) immediately after it stopped, he saw a lot of movement inside the green vehicle and it appeared to him that the occupants were attempting to hide something, (5) the driver of the vehicle exited and was identified as one "Aaron Ortega," (6) the petitioner exited the front passenger seat of the vehicle, (7) he · saw a plastic bag containing jewelry on the floorboard of the front passenger side of the vehicle and a watch on the dashboard, (8) the petitioner told him that the jewelry belonged to the petitioner's daughter, (9) he also saw a blue jean jacket in the back seat of the car which the petitioner also identified as belonging to the petitioner's daughter, and (10) when she arrived at the location where he had stopped the green, two-tone vehicle, Mrs. Luke identified the driver of the vehicle, i.e., Aaron Ortega, as the person whom she had seen dragging a pillow case full of stuff out of the Garcia residence and load it into the green, two-tone vehicle.[63]

---

61. *See Wilkerson v. Whitley,* 16 F.3d 64, 68 (5th Cir.1994), *modified on other grounds,* 28 F.3d 498 (5th Cir.1994), *cert. denied,* 513 U.S. 1085, 115 S.Ct. 740, 130 L.Ed.2d 642 (1995); *Green v. Lynaugh,* 868 F.2d 176, 177 (5th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 102, 107 L.Ed.2d 66 (1989); *see also Williams v. Scott,* 35 F.3d 159, 164 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 959, 130 L.Ed.2d 901 (1995) (holding that trial counsel's advice to a defendant to plead guilty to a capital murder charge did not prejudice the defendant where the evidence of the defendant's guilt was overwhelming).

assistance by appellate counsel did not warrant federal habeas relief); *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) (holding that, without a specific, affirmative showing of precisely what evidence or testimony was rendered unavailable due to a trial counsel's failure to investigate, develop, and present same, i.e., a showing of exactly what the missing evidence or testimony would have been, a court cannot even begin to apply the *Strickland* analysis because it is very difficult to determine whether the defendant was prejudiced by any such deficiencies in counsel's performance); *United States v. Pineda,* 988 F.2d 22, 23 (5th Cir.1993); *Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir.1990); *Russell v. Lynaugh,* 892 F.2d 1205, 1213 (5th Cir.1989), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2909, 115 L.Ed.2d 1073 (1991); *United States v. Woods,* 870 F.2d 285, 288 n. 5 (5th Cir.1989); *Ross v. Estelle,* 694 F.2d at 1011–12 & n. 2. (7)

62. *See* Statement of Facts from petitioner's trial [henceforth "S.F. Trial"], Testimony of Gloria Luke, at pp. 43–58.

63. *See* S.F. Trial, Testimony of Juan Garcia, at pp. 58–74.

Seguin Police Officer Gilbert Soliz testified at petitioner's trial that (1) he responded to the burglary call on the date of the burglary, (2) he went to the Garcia residence and then took Gloria Luke to the location where Officer Garcia had stopped the green, two-tone vehicle, (3) she immediately identified the green vehicle as the one she had seen leaving the Garcia residence with the two burglars as passengers, (4) she told him that she believed that the petitioner had been the driver of that vehicle, (5) when he inspected the Garcia residence, he found that a window in the back of the house was open, a piece of plywood had been broken from the wall, and footprints on it indicated it as the point of entry, and (6) inside the Garcia house, he saw several dresser drawers standing open as if they had been searched and that a pillow case was missing from the bed.[64]

Seguin Police Officer Richard L. Perrill testified at petitioner's trial that (1) he assisted Detective Garcia in stopping the green, two-tone vehicle driven by Aaron Ortega in which the petitioner was a passenger, (2) he issued a traffic citation for no driver's license and no proof of insurance, and (3) he searched the petitioner following the petitioner's arrest and found a number of items, including eight, neatly-folded twenty dollar bills, several Mexican pesos, a watch, pen, calculator, and several other items all on the petitioner's person.[65]

Alfonsia Garcia testified that (1) on the date in question, she resided at the burglarized premises, (2) Gloria Luke was her neighbor, (3) she was out of town on the date in question, (4) when she returned to her home, she found a number of items missing including two videotape recorders, a tape player, approximately two hundred and forty dollars in cash in the form of twenty dollar bills, some Mexican pesos and paper currency from Ecuador, and various other items including all of the jewelry, watches, and other items found on the petitioner's person or inside the green vehicle when it was stopped by the police, (5) she was the owner of all of the money, and other items found on the petitioner's person or in the green vehicle when it was stopped by the police, (6) she never got any of that property back, and (7) she never gave the petitioner or anyone else permission to enter her residence and remove the items in question.[66]

### 4. Failure to Adequately Investigate and Prepare for Trial

In his first, second, third, and tenth assertions of ineffective assistance by his trial counsel outlined above, petitioner argues his trial counsel rendered ineffective assistance by failing to adequately prepare for trial, interview unidentified defense and prosecution witnesses, conduct unspecified pretrial investigation, and discover the exculpatory testimony of one Joe Ortega a/k/a Joe Castillo.

#### a. Conclusory Assertions

 An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance.[67] However, in order to establish that counsel was rendered ineffective by virtue of a failure to investigate the case against a defendant or to discover and present evidence, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed, what evidence would have resulted from that investigation, and how such would have altered the outcome of the case.[68] Furthermore, when a trial counsel's decision not to pursue further investigation into a potential defense or into an area of potential mitigating evidence is based on investigation and consultation with the defendant which leads the attorney to believe that further investiga-

---

**64.** See S.F. Trial, Testimony of Gilbert Soliz, at pp. 74–82.

**65.** See S.F. Trial, Testimony of Richard L. Perrill, at pp. 85–91.

**66.** See S.F. Trial, Testimony of Alfonsia Garcia, at pp. 94–100.

**67.** See Bryant v. Scott, 28 F.3d at 1415.

**68.** See Anderson v. Collins, 18 F.3d at 1221; Nelson v. Hargett, 989 F.2d at 850; United States v. Green, 882 F.2d at 1003; Lockhart v. McCotter, 782 F.2d at 1282–83; Alexander v. McCotter, 775 F.2d at 603; Schwander v. Blackburn, 750 F.2d at 499–500; Ross v. Estelle, 694 F.2d at 1011.

tion would be fruitless, that decision may not be challenged as unreasonable.[69] The extent of an attorney's investigation into an area must be viewed in the context of the defendant's cooperation with the attorney's investigation.[70]

■ The initial problem with petitioner's conclusory assertions in his original federal habeas corpus petition that his trial counsel failed to adequately investigate the case and prepare for trial is that the petitioner has identified no exculpatory evidence or additional defensive theories that would have been discovered or developed had his counsel investigated the case more thoroughly. Nowhere in his original petition does petitioner identify any potential defense witnesses who could have testified at petitioner's trial, explain what testimony any of those witnesses could have provided, or otherwise identify any exculpatory evidence then-available that could have been discovered or developed by a more thorough investigation by his trial counsel. Thus, those assertions of ineffective assistance do not satisfy the prejudice prong of *Strickland.*[71]

### b. *The Castillo Affidavit*

In his subsequent pleadings, petitioner presented this Court with the affidavit of one "Joe M. Castillo," whom petitioner identifies in his unverified, unsworn response to re-

spondent's motion for summary judgment as the driver of the green, two-tone vehicle at the time the Sequin Police Department stopped same on the date of the burglary. In that affidavit, Mr. Castillo asserts that (1) he had borrowed the petitioner's vehicle on the date of the burglary, (2) he had committed the burglary in question, (3) after the burglary, he went and picked up the petitioner, who was a passenger in the car which he was driving at the time the police apprehended them, (4) the petitioner knew nothing about the burglary, and (5) none of the property recovered from the vehicle following his arrest was taken during the burglary.[72]

■ When a habeas petitioner identifies a potential witness whom he claims his trial counsel failed to identify, the petitioner's claim becomes, for purposes of *Strickland*'s prejudice analysis, analogous to a complaint about an uncalled witness. However, complaints of uncalled witnesses are not favored in federal habeas corpus proceedings.[73] The reasons for this are two-fold: first, allegations of what a witness would have testified had he or she been called at trial are largely speculative,[74] and second, because the presumption of reasonableness that applies to a trial counsel's tactical decisions encompasses the decision whether to call specific witnesses to testify at trial.[75]

---

**69.** *See Boyle v. Johnson,* 93 F.3d at 187–88; *West v. Johnson,* 92 F.3d at 1406–09; *Andrews v. Collins,* 21 F.3d at 623.

**70.** *See Randle v. Scott,* 43 F.3d at 225(holding that trial counsel was not ineffective for failing to investigate the validity of the defendant's prior conviction where the defendant was aware that the prior conviction had been reversed but failed to disclose same to his counsel and instead, instructed his counsel to cease investigation into the matter so as to expedite the defendant's entry of a guilty plea).

**71.** *See Anderson v. Collins,* 18 F.3d at 1221; *Nelson v. Hargett,* 989 F.2d at 850; *United States v. Green,* 882 F.2d at 1003; *Lockhart v. McCotter,* 782 F.2d at 1282–83; *Alexander v. McCotter,* 775 F.2d at 603; *Schwander v. Blackburn,* 750 F.2d at 499–500; *Ross v. Estelle,* 694 F.2d at 1011.

**72.** *See* Affidavit of Joe Castillo, attached as Exhibit A to Petitioner's Objections to Respondent Johnson's Motion for Summary Judgment, filed

September 26, 1996, docket entry no. 9. Petitioner has never presented this same affidavit to any state court. Thus, as with several of his newly-asserted claims, petitioner has wholly failed to "fairly present" this new evidence to any state court.

**73.** *Buckley v. Collins,* 904 F.2d 263, 265 (5th Cir.), *cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 543 (1990); *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir.1984).

**74.** *McCoy v. Cabana,* 794 F.2d 177, 183 (5th Cir.1986); *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987); *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984).

**75.** *Millard v. Lynaugh,* 810 F.2d 1403, 1409 (5th Cir.), *cert. denied,* 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 81 (1987); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir.1985).

The problems with petitioner's reliance upon the Castillo affidavit to support his claim that his trial counsel failed to adequately investigate the case against petitioner are legion. First, at petitioner's trial, two different Seguin Police Officers identified the driver of the green, two-tone vehicle in which petitioner was a passenger as one "Aaron Ortega."[76] At no point in his affidavit does Joe M. Castillo claim that he has ever gone by the name "Aaron Ortega." While petitioner asserts in his supplemental pleading that Joe M. Castillo also goes by the name "Ortega," that unsworn pleading is insufficient to provide the type of "clear and convincing" evidence necessary to overcome the state habeas court's specific factual findings.

Second, the Castillo affidavit specifically states that the petitioner loaned him the green, two-tone car on the date of the burglary and that Castillo went and picked up the petitioner after committing the burglary. Thus, by necessary implication, this affidavit establishes that the petitioner was aware of the identity of Castillo at least as early as the date of the burglary. Yet, nowhere in his pleadings in this cause does the petitioner ever allege that he ever informed his trial counsel that someone named "Joe M. Castillo" could furnish exculpatory testimony at petitioner's trial. If, as petitioner now alleges, his trial counsel failed to "discover" the identity of the driver of the green, two-tone vehicle in which petitioner was a passenger shortly before petitioner's arrest, then, by necessary implication, petitioner must have concealed the identity of that person from his own trial counsel.

Third, nowhere in his affidavit does Joe M. Castillo ever allege that petitioner's trial counsel failed to contact him or to interview him prior to trial. Moreover, nowhere in his affidavit does Joe M. Castillo ever allege that he was willing and able to testify at petitioner's trial. Joe M. Castillo admits that he was arrested and charged with the same burglary for which petitioner was convicted, but Castillo never once in his affidavit asserts that

either (1) he had already been convicted at the time of petitioner's trial or (2) he would have been willing to waive his Fifth Amendment right against self-incrimination and to admit under oath at petitioner's trial that he committed the burglary of the Garcia residence. Furthermore, at least one critical portion of the Castillo affidavit is not only internally inconsistent but also entirely inconsistent with the uncontroverted testimony at petitioner's trial. Castillo asserts in his affidavit that while he burglarized the Garcia residence on the date in question and afterwards picked up the petitioner, he also claims when he was stopped while driving the green, two-tone vehicle less than twenty minutes after the burglary, "none of the stuff found in Pedro Jesus Flores' possession was out of the burglary I committed." However, the testimony of the complainant at petitioner's trial was uncontroverted that the various items found on petitioner's person at the time of his arrest had been taken from her home.[77] Moreover, Castillo does not allege that he ever disposed of the property he took during the burglary before he went to pick up the petitioner. Furthermore, at the time the green, two-tone vehicle was stopped by police, the petitioner asserted that the various items in question belonged to his daughter.[78] Petitioner has offered this Court absolutely no evidence, other than the Castillo affidavit, establishing that the property in question actually belonged to petitioner's daughter or that it had not been taken in the burglary of the Garcia residence.

In the findings of fact issued in the course of the petitioner's state habeas corpus proceeding, the state trial judge expressly and specifically found that (1) petitioner's trial counsel has prepared for trial by reviewing offense reports and witness statements and discussing the case with the petitioner and (2) the petitioner had not furnished his trial counsel with the names of any credible witnesses. Pursuant to the AEDPA, these fact findings are presumed correct unless the pe-

---

**76.** See S.F. Trial, Testimony of Juan Garcia, at p. 64; and Testimony of Richard L. Perrill, at p. 87.

**77.** See S.F. Trial, Testimony of Alfonsia Garcia, at pp. 98–99.

**78.** See S.F. trial, Testimony of Juan Garcia, at pp. 65–68.

titioner rebuts them with clear and convincing evidence.[79]

The state habeas court's fact findings regarding the trial preparations of petitioner's trial counsel implicitly refute the petitioner's assertion regarding his trial counsel's failure to "discover" the identity of Joe M. Castillo. The state habeas court specifically found that petitioner's trial counsel reviewed the offense reports and witness statements in the possession of the police prior to trial. Nowhere in his pleadings in this cause does petitioner assert that the identity of the driver of the green, two-tone vehicle in which petitioner was a passenger when stopped by police on the date of the burglary was not included in the offense reports which his trial counsel reviewed. On the contrary, the necessary implication from the state habeas court's fact findings is that petitioner's trial counsel was made aware of all of the information contained in the offense reports, including presumably the identity of the person with whom petitioner was riding at the time of his arrest. Petitioner does not allege that he failed to identify to his trial counsel the driver of the green vehicle in which petitioner was a passenger at the time of his arrest. Castillo does not allege in his affidavit that he ever concealed his identity from petitioner's attorney and in fact, does not ever specifically deny talking with petitioner's attor-

ney prior to trial. The evidence at trial was uncontroverted that both the petitioner and the driver of the green, two-tone vehicle were apprehended and identified by an eyewitness less than twenty minutes after the burglary.[80] Under such circumstances, neither the Castillo affidavit nor any of the petitioner's unsworn, unverified allegations rise to the level of clear and convincing evidence establishing that petitioner's trial counsel failed to discover the identity of the driver of the green, two-tone vehicle in which petitioner was riding shortly before his arrest. Thus, petitioner's assertions of inadequate investigation by his trial counsel fail to satisfy the first prong of *Strickland*.

■ Furthermore, even if this Court were to apply the legal standard for reviewing state court fact findings that applied prior to the enactment of the AEDPA, petitioner could still not overcome the effect of those fact findings in this case. Under pre-AEDPA case law, it was well-settled in this circuit that state court factual findings were entitled to great deference from this Court.[81] "Federal courts in habeas proceedings are required to grant a presumption of correctness to a state court's explicit and implicit findings of fact if supported by the record."[82] Both implied and explicit fact findings fall

**79.** *See* 28 U.S.C. § 2254(e)(1).

**80.** *See* S.F. Trial, Testimony of Juan Garcia, at pp. 59–64; Testimony of Gilbert Soliz, at pp. 76–78; Testimony of Gloria Luke, at pp. 50–51.

**81.** *See* 28 U.S.C. § 2254(d); *Burden v. Zant*, 498 U.S. 433, 436–37, 111 S.Ct. 862, 864, 112 L.Ed.2d 962 (1991); *Sumner v. Mata*, 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981); *Amos v. Scott*, 61 F.3d 333, 346 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995); *Gilley v. Collins* 968 F.2d 465, 469 (5th Cir.1992); *Smith v. Collins*, 964 F.2d 483, 485 (5th Cir.1992); *Lincecum v. Collins*, 958 F.2d 1271, 1278–79 (5th Cir.), *cert. denied*, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992); *Barnard v. Collins*, 958 F.2d 634, 636 (5th Cir.1992), *cert. denied*, 506 U.S. 1057, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993); *King v. Collins*, 945 F.2d 867, 868 (5th Cir.1991); *Carter v. Collins*, 918 F.2d 1198, 1202, (5th Cir.1990); *Loyd v. Smith*, 899 F.2d 1416, 1425 (5th Cir. 1990). "A state court's determinations on the merits of a factual issue are entitled to a pre-

sumption of correctness on federal habeas review. A federal court may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.'" *Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990). State court factual findings are entitled to this presumption absent one of eight statutory exceptions. *Cantu v. Collins*, 967 F.2d 1006, 1015 (5th Cir.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993).

**82.** *Loyd v. Smith*, 899 F.2d at 1425; *see Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Monroe v. Collins*, 951 F.2d 49, 51 (5th Cir.1992). However, a federal habeas court may not give deference to "implied" fact findings when the affidavits before the state habeas court were silent on a critical issue or the state presented no affidavits on a critical fact issue. *See also Armstead v. Scott*, 37 F.3d 202, 208–09 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995).

within the ambit of Section 2254(d).[83] Even an ambiguous record entitles state court fact findings to the presumption of correctness.[84]

While former Section 2254(d) required a "hearing on the merits" in the state court on the disputed factual issue in order to raise this presumption of correctness in the federal proceeding, a live evidentiary hearing was not necessarily required.[85] The Fifth Circuit distinguished between the deference due state court factual findings made pursuant to a "paper hearing" based upon whether the same trial judge who presided at trial also made the fact findings in question in the course of a subsequent state habeas corpus proceeding.[86] The presumption of correctness accorded state court fact findings applied even when the state court relied upon affidavits rather than hearing live testimony if the same state court judge who presided over the federal habeas petitioner's state trial court proceedings also presided over the state habeas proceeding that produced the fact findings in question.[87] When a state court entered written fact findings in which credibility questions are resolved and the

same state court judge heard both the trial on the merits and the state application for habeas corpus, the state fact findings were entitled to a presumption of correctness even without a live, evidentiary state habeas hearing.[88] However, fact findings based solely on a paper record were not always necessarily adequate to satisfy former § 2254(d)(2) and, therefore, federal habeas courts could not always grant the presumption of correctness as, for example, when different state court judges presided over the petitioner's trial and state habeas proceedings.[89] Under pre-AEDPA case law, regardless of the nature of the state court hearing, the burden was on the habeas petitioner to establish by clear and convincing evidence that the factual determinations of a state court were erroneous.[90]

In petitioner's case, the same state trial court judge presided over petitioner's trial and the "paper hearing" in petitioner's state habeas corpus proceeding. Furthermore, the state trial court's factual findings regarding petitioner's trial counsel's pretrial

**83.** See Marshall v. Lonberger, 459 U.S. 422, 433–34, 103 S.Ct. 843, 850–51, 74 L.Ed.2d 646 (1983); Cantu v. Collins, 967 F.2d at 1015; McCoy v. Cabana, 794 F.2d 177, 182 (5th Cir. 1986).

**84.** See Teague v. Scott, 60 F.3d 1167, 1170 (5th Cir.1995); James v. Whitley, 39 F.3d 607, 610 (5th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1704, 131 L.Ed.2d 565 (1995).

**85.** See Vuong v. Scott, 62 F.3d at 683–84; Amos v. Scott, 61 F.3d at 347; Armstead v. Scott, 37 F.3d at 207–08; James v. Collins, 987 F.2d 1116, 1122 (5th Cir.), cert. denied, 509 U.S. 947, 114 S.Ct. 30, 125 L.Ed.2d 780 (1993); Sawyers v. Collins, 986 F.2d 1493, 1505 (5th Cir.), cert. denied, 508 U.S. 933, 113 S.Ct. 2405, 124 L.Ed.2d 300 (1993); Drew v. Collins, 964 F.2d 411, 423 n. 12 (5th Cir.1992), cert. denied, 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 730 (1993); Lincecum v. Collins, 958 F.2d at 1279; Ellis v. Collins, 956 F.2d 76, 79 (5th Cir.), cert. denied, 503 U.S. 915, 112 S.Ct. 1285, 117 L.Ed.2d 510 (1992); Clark v. Collins, 956 F.2d 68, 72 (5th Cir.), cert. denied, 503 U.S. 901, 112 S.Ct. 1254, 117 L.Ed.2d 485 (1992); May v. Collins, 955 F.2d 299, 309–15 (5th Cir.), cert. denied, 504 U.S. 901, 112 S.Ct. 1925, 118 L.Ed.2d 533 (1992); Carter v. Collins, 918 F.2d at 1202; Buxton v. Lynaugh, 879 F.2d 140, 143–47 (5th Cir.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990).

Under certain circumstances, fact findings made by state appellate courts, even those based on credibility determinations drawn from paper hearings, may be entitled to deference under Section 2254(d). See May v. Collins, 955 F.2d at 314–15.

**86.** See Vuong v. Scott, 62 F.3d at 683–84; Armstead v. Scott, 37 F.3d at 207; Nethery v. Collins, 993 F.2d at 1157 n. 8; James v. Collins, 987 F.2d at 1122; Ellis v. Collins, 956 F.2d at 79; May v. Collins, 955 F.2d at 312; Buxton v. Lynaugh, 879 F.2d at 143–47.

**87.** See Vuong v. Scott, 62 F.3d at 683–84; Armstead v. Scott, 37 F.3d at 208; James v. Collins, 987 F.2d at 1122; Ellis v. Collins, 956 F.2d at 79; May v. Collins, 955 F.2d at 310.

**88.** See Armstead v. Scott, 37 F.3d at 208; James v. Collins, 987 F.2d at 1122; Ellis v. Collins, 956 F.2d at 79; May v. Collins, 955 F.2d at 307; Buxton v. Lynaugh, 879 F.2d at 144–46.

**89.** See Salazar v. Johnson, 96 F.3d 789, 791–92 (5th Cir.1996); Armstead v. Scott, 37 F.3d at 207; Nethery v. Collins, 993 F.2d 1154, 1157 n. 8 (5th Cir.1993), cert. denied, 511 U.S. 1026, 114 S.Ct. 1416, 128 L.Ed.2d 87 (1994); Ellis v. Collins, 956 F.2d at 79; May v. Collins, 955 F.2d at 312.

**90.** Sumner v. Mata, 449 U.S. at 551, 101 S.Ct. at 771.

preparations are fully supported by the uncontroverted affidavit of said counsel filed in connection with petitioner's state habeas corpus proceeding. In that affidavit, in which said counsel avers that (1) his research revealed that the petitioner had a long criminal record prior to his arrest on the burglary charge, (2) the police reports and witness statements which he reviewed prior to trial revealed that the petitioner drove his wife's uniquely colored vehicle up to a residence while two co-defendants exited the house with stolen goods and entered the vehicle, (3) the police stopped the vehicle twenty minutes later and found the petitioner in possession of stolen property, (4) he conferred with the petitioner, (5) the petitioner's wife had a criminal record as well, (6) he explained the law and facts to the petitioner who rejected a plea bargain offer of a thirty-year sentence, and (7) he offered to subpoena witnesses for trial but the petitioner had no witnesses whom he wanted to present.[91] Thus, the state habeas court's fact findings are fully supported by the record before that court.

Thus, even under pre-AEDPA case law, the petitioner can avoid the effect of those state habeas court fact findings regarding the trial preparations of petitioner's defense counsel only by a showing of clear and convincing evidence. As explained above, petitioner's evidence, i.e., the Castillo affidavit, does not begin to approach the level of clear and convincing evidence.

The alleged failure of petitioner's trial counsel to "discover" the identity of Joe M. Castillo also did not prejudice petitioner within the meaning of *Strickland*. There is simply no reasonable probability that, but for the failure of petitioner's trial counsel to present the testimony of Castillo a/k/a Ortega at trial, the outcome of petitioner's trial would have been any different. As explained above, petitioner has presented this Court with absolutely no specific factual allegations or evidence establishing that, as of the date of petitioner's trial, Castillo was "available" to testify at petitioner's trial. While Castillo does confess his involvement in the burglary

in his affidavit and does claim petitioner knew nothing about the burglary at the time Seguin Police officers stopped the green, two-tone vehicle, he did not allege in his affidavit that he would have testified to those same facts had he been called to testify at petitioner's trial on April 18–19, 1994. Thus, petitioner has failed to establish that Castillo was "available" to testify at petitioner's trial.

Shortly before his arrest, the petitioner represented to the police that various items in his possession belonged to his daughter. However, at trial, the complainant testified, without contradiction, that those very same items had been taken from her residence. Petitioner has offered this Court no new evidence on that subject. Likewise, there was an eyewitness to the burglary who testified that she saw the petitioner drive by the Garcia residence during the burglary and then come back to pick up the two burglars as they carried their ill-gotten gains away in a pillow case. There was no question as to the identification of the get-away vehicle which was stopped less then twenty minutes after the burglary while transporting both the petitioner and much of the stolen property, some of which was found on the petitioner's person. The jury deliberated only fifteen minutes before it convicted petitioner. Under such circumstances, there is simply no reasonable probability that, but for the failure of petitioner's trial counsel to call Castillo to testify, the outcome of the guilt-innocence phase of the petitioner's trial would have been any different. Likewise, the failure of petitioner's trial counsel to call Castillo to testify did not render petitioner's trial fundamentally unfair nor did that failure render the outcome of petitioner's trial unreliable.

Because petitioner failed to present the Castillo affidavit to the state courts in the course of his state habeas corpus proceeding and because petitioner has alleged no facts establishing that this affidavit was unavailable at the time petitioner filed and prosecuted his state habeas corpus proceeding, petitioner is not entitled to an evidentiary

---

**91.** *See* Affidavit of Mark Janssen, attached to Second Supplemental Transcript, included among the state court papers relating to petitioner's first state habeas corpus proceeding.

hearing in this federal habeas corpus proceeding regarding that affidavit.[92]

In light of the state habeas courts' fact findings regarding the nature of the trial preparations undertaken by petitioner's trial counsel and absolute failure of the petitioner to present this Court with any clear and convincing evidence negating those findings, the rejection of petitioner's first group of ineffective assistance of counsel claims by the Texas courts was neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, the failure of petitioner's trial counsel to present Joe M. Castillo as a witness at petitioner's trial did not prejudice petitioner within the meaning of *Strickland* and did not cause the performance of said counsel to fall below an objective level of reasonableness. Therefore, petitioner's first, second, third, and tenth assertions of ineffective assistance by his trial counsel do not warrant federal habeas corpus relief.

### 5. *Failure to File Pretrial Motions and Request Examining Trial*

■ In his fourth and ninth assertions of ineffective assistance by his trial counsel, petitioner argues his trial counsel failed to file any pretrial motions and failed to request an examining trial. The first of these assertions is factually inaccurate, however, as even a cursory review of the transcript from petitioner's state trial court proceedings reveals. Petitioner's trial counsel filed a pretrial motion for disclosure of exculpatory or favorable evidence, a pretrial motion in limine regarding the petitioner's prior misconduct, and an election to have the jury assess punishment. Nowhere in his original habeas corpus petition does petitioner either identify any other pretrial motions which he claims his trial counsel should have filed or explain how he

was prejudiced by his trial counsel's failure to file such motions. Thus, the erroneous assertion by petitioner that his trial counsel failed to file any pretrial motions fails to satisfy the prejudice prong of *Strickland*.

■ In his supplemental pleading, petitioner argues his trial counsel failed to request an examining trial. The problem with this assertion is that the petitioner was arrested on November 17, 1993, i.e., the date of the burglary, and indicted on the burglary charge on December 3, 1993. It has been clear for more than a generation that there is no federal constitutional right to a preliminary hearing or, as it is known in Texas, an "examining trial." [93] Furthermore, under Texas law, petitioner's state procedural right to an examining trial terminated the instant he was indicted.[94] The decision by state authorities to seek petitioner's indictment in lieu of affording petitioner a preliminary hearing or examining trial also did not affect the validity of petitioner's indictment.[95]

Petitioner has not alleged any facts establishing that his trial counsel was either appointed or retained prior to the date on which petitioner was indicted. Thus, petitioner has alleged no facts showing that his trial counsel ever had the opportunity to make a timely request for an examining trial. Petitioner has also failed to allege any facts establishing that, but for the failure of his trial counsel to request an examining trial, the outcome of petitioner's trial would have been different. Petitioner has not identified any potential benefit he might have obtained as a result of the state trial court holding a preliminary hearing in lieu of the prosecution sending the case against petitioner to a grand jury. For instance, petitioner has not identified any exculpatory evidence or defensive theories which could have been discovered or made available through an examining trial that were otherwise unavailable to him. Petitioner's right to request an examining

**92.** *See* 28 U.S.C. § 2254(e)(2).

**93.** *See Siwakowski v. Beto,* 455 F.2d 915, 916 (5th Cir.1972); *Richardson v. State of Texas,* 425 F.2d 1372, 1373 (5th Cir.1970); *Murphy v. Beto,* 416 F.2d 98, 100 (5th Cir.1969); *Woods v. State of Texas,* 404 F.2d 332, 332 (5th Cir.1968).

**94.** *See Tarpley v. Estelle,* 703 F.2d 157, 162 (5th Cir.1983), *cert. denied sub nom. McKaskle v. Tarpley,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983).

**95.** *See State of Texas v. Reimer,* 678 F.2d 1232, 1233 (5th Cir.1982).

trial terminated on the date he was indicted.[96] Under such circumstances, petitioner's complaint that his trial counsel failed to request an examining trial fails to satisfy either prong of *Strickland.*

The Texas courts' rejection of petitioner's fourth and ninth assertions of ineffective assistance by his trial counsel were not the products of an unreasonable application of clearly established Federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. For the foregoing reasons, petitioner's fourth and ninth assertions of ineffective assistance by his trial counsel do not warrant federal habeas relief.

6. *Failure to "Discover" Petitioner Would Be Tried Under the Law of Parties*

 In his conclusory fifth assertion of ineffective assistance by his trial counsel, petitioner argues that his trial counsel failed to "discover" that petitioner would be tried under the law of parties rather than as a principal. The first problem with this assertion is that, as explained above, the state habeas court specifically found that petitioner's trial counsel had reviewed the police reports and witness statements prior to trial and had consulted with petitioner. Thus, it is highly unlikely that petitioner's trial counsel was unaware of the evidence supporting the prosecution's theory of the case, i.e., that the petitioner had driven the get-away vehicle and was found with property stolen in the burglary on his person less than twenty minutes after the burglary but had not actually entered the burglarized premises.

 Assuming arguendo that petitioner's trial counsel did not, in fact, discover the obvious, petitioner's fifth assertion of ineffective assistance by his trial counsel still does not satisfy the prejudice prong of *Strickland.*

Petitioner's trial counsel made a timely objection to the state trial court's submission of a jury instruction on the law of parties and unsuccessfully argued that petitioner could not be convicted under the law of parties because he had been charged as a principal in his indictment.[97] Petitioner's trial counsel thereby preserved this issue for state appellate review. Petitioner's trial counsel, who also served as petitioner's appellate counsel, then raised this same argument as the basis for petitioner's sole point of error on direct appeal, and the Texas Fourth Court of Appeals addressed the merits of this argument but rejected same. Moreover, as the Texas Fourth Court of Appeals made clear in its opinion affirming petitioner's conviction, under Texas law, if the evidence supports a charge on the law of parties, the trial court may charge on the law of parties even though there is no such allegation in the indictment.[98] Nor did the state trial court's submission of a jury instruction on the law of parties violate petitioner's federal constitutional rights. One who has been indicted as a principal may, on proper instructions, be convicted on evidence showing he aided and abetted the commission of the offense.[99]

 Under applicable Texas law, a person commits the offense of burglary if, without the effective consent of the owner, he enters a building not then open to the public with the intent to commit theft.[100] A person is criminally responsible for an offense committed by another under Texas law if, acting with the intent to promote or assist the commission of the offense, he aids or attempts to aid the other person to commit the offense.[101] Thus, under the Texas theory of parties, a person can be guilty of burglary even though he did not personally enter the burglarized premises if he is acting together with another in the commission of the of-

96. *See Tarpley v. Estelle,* 703 F.2d at 162; *State of Texas v. Reimer,* 678 F.2d at 1233.

97. *See* S.F. Trial, at p. 103.

98. *See Crank v. State,* 761 S.W.2d 328, 352 (Tex. Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162, (1989).

99. *Jacobs v. Scott,* 31 F.3d 1319, 1329 (5th Cir. 1994), *cert. denied,* 513 U.S. 1067, 115 S.Ct. 711, 130 L.Ed.2d 618 (1995).

100. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 1994).

101. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994).

fense.[102] The evidence presented at the guilt-innocence phase of petitioner's trial was more than sufficient to support the submission of a jury instruction on the law of parties.[103]

Petitioner has alleged no facts establishing that, but for alleged failure of his trial counsel to discover prior to trial that petitioner would be tried under the law of parties rather than as a principal, the outcome of petitioner's trial would have been any different. As explained above, under applicable state law there was nothing defective in either the manner in which petitioner was indicted or in which the state trial court charged the jury at the guilt-innocence phase of petitioner's trial. Petitioner's federal constitutional rights were not violated by either the manner in which he was indicted or in which his jury was charged at trial.[104] Given the overwhelming evidence of petitioner's participation in the burglary introduced during petitioner's trial, petitioner has failed to allege any facts establishing that there was anything his trial counsel could have done to prevent petitioner's conviction under the law of parties.

For the foregoing reasons, petitioner's fifth assertion of ineffective assistance by his trial counsel does not satisfy the prejudice prong of *Strickland* and does not warrant federal habeas relief.

7. *Failure to Object to Jury Charge and Request Instruction on "Mistake of Fact" Defense*

■ In his sixth, seventh, and eleventh assertions of ineffective assistance by his tri-

al counsel, petitioner argues that his trial counsel failed to object to the jury charge on unspecified grounds, request a jury instruction on a "mistake of fact" defense, and object to the absence of a jury instruction on "mistake of fact" from the guilt-innocence phase jury instructions.

The problem with the first of these three assertions is that petitioner's trial counsel did, in fact, make a timely objection to the jury charge and that objection properly preserved petitioner's complaint on direct appeal that the trial court had improperly instructed the jury on the law of parties.[105] Thus, petitioner's assertion that his trial counsel failed to make any objections to the jury charge is factually inaccurate.

The problem with the latter two of these assertions of ineffective assistance is that petitioner has failed to identify any evidence introduced at his trial that would have supported a jury instruction on "mistake of fact." The closest petitioner comes to identifying such evidence is his reference to the evidence in the record which showed that after the vehicle in which he was riding was stopped by the police, he told the police officers that the various items of property on the floor board of the passenger side of the front seat belonged to his daughter.[106]

■ Under Texas law, a criminal defendant is entitled to a jury instruction on the defense of "mistake of fact" if the evidence shows that "the actor through mistake formed a reasonable belief about a matter if his mistaken belief negated the kind of culpability required for commission of the offense."[107] Texas courts have held that a

**102.** See Wilkerson v. State, 874 S.W.2d 127, 129 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

**103.** Wilkerson v. State, 874 S.W.2d at 129–30 (holding that evidence was sufficient to support burglary conviction under Texas theory of parties where evidence showed the defendant was the driver of the get-away car and that he attempted to flee from police).

**104.** See Jacobs v. Scott, 31 F.3d at 1329.

**105.** See S.F. Trial, at p. 103.

**106.** See Petitioner's Objections to Respondent Johnson's Motion for Summary Judgment, filed September 26, 1996, docket entry no. 9, at p. 17.

**107.** See Miller v. State, 815 S.W.2d 582, 585 (Tex.Crim.App.1991); King v. State, 919 S.W.2d 819, 821 (Tex.App.—El Paso 1996, no pet.); Lugo v. State, 923 S.W.2d 598, 601 (Tex.App. Houston [1st Dist.] 1995, pet. ref'd); Thomas v. State, 855 S.W.2d 212, 214 (Tex.App.—Corpus Christi 1993, no pet.); Jones v. State, 850 S.W.2d 236, 240 (Tex.App.—Fort Worth 1993, no pet.); White v. State, 844 S.W.2d 929, 933 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); Bang v. State, 815 S.W.2d 838, 841–42 (Tex.App.-Corpus Christi 1991, no pet.); Tex. Penal Code Ann. § 8.02(a) (Vernon 1994).

trial counsel's failure to request a jury instruction on mistake of fact can rise to the level of ineffective assistance.[108] However, to warrant such an instruction, the evidence of reasonable mistake must negate the necessary culpability required for commission of the offense.[109] Allegations of mistake regarding irrelevant matters do not warrant such an instruction.[110] Petitioner's remark to his arresting officers that he believed the stolen jewelry on the floorboard of his wife's car belonged to his daughter was irrelevant to the issue of whether petitioner had aided and abetted a burglary by driving the burglars away from the crime scene.[111]

Under Texas law, mistake of fact can be properly raised in a burglary case.[112] In this case, however, the petitioner never took the stand at trial or offered any other direct or circumstantial evidence at trial establishing that he was unaware of the felonious conduct of the two burglars whom petitioner picked up and drove away from the Garcia residence along with the pillow case full of stuff on the afternoon in question. Petitioner's claim that he mistakenly believed that the jewelry in plain view on the floorboard of his wife's vehicle belonged to his daughter has no relevance to the issue of whether the petitioner, who was found in personal possession of numerous items, including currency, later identified as taken from the burglarized Garcia residence, had intentionally or knowingly aided and abetted the burglary of the Garcia residence. Petitioner offered absolutely no evidence at trial establishing that he ever believed that either he or the two burglars had the permission of Alfonsia Garcia to break into her home and take the many items and currency which were later found in petitioner's personal possession. Likewise, petitioner offered no evidence at trial establishing that he was unaware that a burglary had occurred when he picked up and drove away with the two burglars and their pillow case full of stuff.

Petitioner was tried and convicted for having aided and abetted a burglary by driving the get-away vehicle from the crime scene,

108. *See Green v. State*, 899 S.W.2d 245, 248–49 (Tex.App.—San Antonio 1995, no pet.).

109. *See Lugo v. State*, 923 S.W.2d at 601 (holding that a defendant's allegedly mistaken belief that he was a parent or relative of the child he abducted did not warrant a mistake of fact instruction because it went not to the culpable mental state required for the offense but merely raised an affirmative defense to the crime of kidnaping); *Green v. State*, 899 S.W.2d at 248–49 (holding that defense counsel rendered ineffective assistance in failing to request a mistake of fact instruction where there was evidence the defendant charged with theft by deception had mistakenly believed he had sufficient funds in his checking account to cover the check he used to purchase jewelry); *Thomas v. State*, 855 S.W.2d at 214–15 (holding that a defendant's mistaken belief that he was attempting to save a human life did not warrant an instruction on mistake of fact in a criminal trespassing prosecution); *White v. State*, 844 S.W.2d at 933 (holding that a defendant's mere assertion that he had offered the arresting officer an "explanation" for defendant's driving a stolen vehicle did not warrant an instruction on mistake of fact).

110. *See Lugo v. State*, 923 S.W.2d at 601; *Green v. State*, 899 S.W.2d at 248–49; *Thomas v. State*, 855 S.W.2d at 214–15; *White v. State*, 844 S.W.2d at 933.

111. *See Jones v. State*, 850 S.W.2d at 240 (holding that a defendant's claim that he mistakenly believed that he had a date with the complainant and therefore was justified in illegally entering the complainant's residence, did not warrant an instruction on mistake of fact where the charge was attempted sexual assault).

112. *See Bang v. State*, 815 S.W.2d at 840–42 (holding that a mistake of fact instruction was necessary in a burglary trial where the defendant testified that he drove a friend to a church, which his friend burglarized, without any knowledge that his friend was going to burglarize the church after his friend informed the defendant that the friend was going to the church after hours to retrieve some property he had left there, the petitioner never saw his friend enter or exit the church, the friend carried no tools with him, and the defendant had no knowledge that his friend intended to burglarize the church or had done so even after the fact). Unlike the defendant in *Bang*, however, petitioner herein failed to take the stand and did not offer any evidence at his trial which established that petitioner was unaware of the criminal nature of the activity engaged in inside the Garcia residence on the afternoon in question by the two men whom petitioner picked up and drove away from that residence. Significantly, petitioner offered no evidence at trial along the lines of that contained in the Castillo affidavit which petitioner has never presented to any state court and which he presented to this Court for the first time in September, 1996.

not with having received stolen property. Thus, petitioner's assertions to the police that he believed the jewelry on the floorboard of the passenger side front seat of his wife's vehicle belonged to his daughter bore no relevance whatsoever to the charge of aiding and abetting burglary that was brought against petitioner. Petitioner's trial was not an instance in which there was any evidence introduced at trial which established the defendant mistakenly believed some fact which would have rendered his criminal conduct innocent. Therefore, petitioner was not prejudiced within the meaning of *Strickland* by his trial counsel's failure to request a jury instruction on mistake of fact because, under applicable Texas law, petitioner would not have been entitled to such an instruction even if his trial counsel had requested same.

For the foregoing reasons, petitioner's sixth, seventh, and eleventh assertions of ineffective assistance do not satisfy the prejudice prong of *Strickland* and do not warrant federal habeas corpus relief.

8. *Failure to Explain Law and Facts to Petitioner*

▮ In his eighth assertion of ineffective assistance by trial counsel, petitioner argues in rather cryptic terms that his trial counsel failed to adequately discuss and explain the applicable law and facts relevant to petitioner's case. The problem with this assertion is that petitioner has alleged absolutely no facts establishing that a reasonable probability exists that, but for the failure of his trial counsel to more throughly explain the law and facts applicable to petitioner's case, the outcome of petitioner's trial would have been any different. In short, petitioner has wholly failed to allege any facts establishing that, but for his trial counsel's failure to more thoroughly discuss the case with petitioner, any new defensive theories or additional exculpatory evidence could have been discovered or developed.[113]

For example, petitioner does not allege that, but for his trial counsel's failure to more thoroughly explain the law and facts relevant to petitioner's case, petitioner would have accepted the prosecution's proffered plea bargain which involved a thirty year sentence. In fact, in his most recent pleading, petitioner continues to assert his lack of participation in the burglary. Petitioner is a career criminal who was indicted as a repeat offender in connection with this burglary charge and who was awaiting trial on multiple criminal charges at the time of his trial in this case.[114] There is simply no reasonable probability that, but for the failure of petitioner's trial counsel to more throughly explain the applicable law and facts to petitioner, the outcome of petitioner's trial would have been any different. As explained above, with evidence as overwhelming as that presented by the prosecution at petitioner's trial, there was little that any attorney could have done to have avoided petitioner's conviction for aiding and abetting burglary.[115]

During petitioner's state habeas corpus proceeding, the state furnished the state habeas court with affidavits from both petitioner's trial counsel and the prosecuting attorney which established the extensive pretrial investigation engaged in by petitioner's trial counsel and the total absence of any viable defense to the charge against petitioner. Petitioner offered the state habeas court no rebuttal affidavits or other evidence controverting the assertions of his former trial counsel or otherwise establishing that a potentially viable defense existed at the time of his trial. The state habeas court expressly and specifically found that petitioner's trial counsel had discussed the law and facts with the petitioner and the petitioner had given his trial counsel the names of no credible witnesses. Petitioner has presented this Court with no clear and convincing evidence negating either of those factual findings.

---

113. *See Anderson v. Collins*, 18 F.3d at 1221; *Nelson v. Hargett*, 989 F.2d at 850; *United States v. Green*, 882 F.2d at 1003; *Lockhart v. McCotter*, 782 F.2d at 1282–83; *Alexander v. McCotter*, 775 F.2d at 603; *Schwander v. Blackburn*, 750 F.2d at 499–500; *Ross v. Estelle*, 694 F.2d at 1011.

114. *See* Affidavit of Mark Janssen, included among state court papers in the Second Supplemental Transcript in petitioner's first state habeas corpus proceeding.

115. *See Wilkerson v. Whitley*, 16 F.3d at 68; *Green v. Lynaugh*, 868 F.2d at 177.

For the foregoing reasons, the state courts' rejection of petitioner's assertion that his trial counsel rendered ineffective assistance by failing to more thoroughly discuss the fact and law applicable to the case with petitioner was neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts from the evidence. Petitioner's eighth assertion of ineffective assistance by his trial counsel fails to satisfy the prejudice prong of *Strickland* and does not warrant federal habeas relief.

For the foregoing reasons, none of the petitioner's assertions of ineffective assistance by his trial counsel warrant federal habeas corpus relief.

### E. Ineffective Assistance by Appellate Counsel

#### 1. Assertions

In his second ground for federal habeas corpus relief, petitioner argues that his appellate counsel rendered ineffective assistance by (1) presenting only a single point of error and limited briefing in petitioner's appellant's brief and (2) failing to file a petition for discretionary review on petitioner's behalf.

#### 2. Standard of Review

The two-part *Strickland* test applies to most complaints regarding the performance of counsel on appeal.[116] While it is true that actual or constructive denial of counsel on appeal results in a presumption of "prejudice," as that term is defined under the *Strickland* test, a claim of merely ineffective assistance by appellate counsel still requires the petitioner to satisfy the prejudice prong of that test.[117] Where a defendant's appellate counsel presented, briefed, and argued, albeit unsuccessfully, one or more nonfrivolous grounds for relief on appeal, the defendant was neither actually nor constructively denied assistance of counsel on direct appeal.[118] For that reason, where a defendant's appellate counsel presented nonfrivolous points of error on appeal or did not seek to withdraw from representation without filing an adequate *Anders* brief, a defendant must satisfy *both* prongs of the *Strickland* test in connection with his claims of ineffective assistance by his appellate counsel.[119] Therefore, because petitioner's appellate counsel filed and briefed at least one nonfrivolous point of error in petitioner's direct appeal, petitioner must satisfy both prongs of *Strickland* to prevail on his assertions of ineffective assistance by his appellate counsel.

Furthermore, satisfying the prejudice prong of *Strickland* in the connection with a claim of ineffective assistance by appellate counsel requires more than a mere complaint about deficiencies in an appellate brief. Appellate counsel are not required to present patently frivolous arguments on appeal, or even to present all non-frivolous points that could have been raised.[120] "The

---

116. *See Williams v. Collins*, 16 F.3d at 635; *Cantu v. Collins*, 967 F.2d at 1017; *Duhamel v. Collins*, 955 F.2d at 967–68; *Sharp v. Puckett*, 930 F.2d 450, 451 (5th Cir.1991); *Lofton v. Whitley*, 905 F.2d 885, 887–88 (5th Cir.1990); *McCoy v. Lynaugh*, 874 F.2d 954, 962–63 (5th Cir.1989); *Ellis v. Lynaugh*, 873 F.2d at 840; *Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir.), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). *But see Penson v. Ohio*, 488 U.S. 75, 86–89, 109 S.Ct. 346, 353–55, 102 L.Ed.2d 300 (1988) (holding that the prejudice prong of the *Strickland* test does not apply in cases where appellate counsel withdraws without filing the brief suggested in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)); *Moss v. Collins*, 963 F.2d 44, 47 (5th Cir.1992), *cert. denied*, 506 U.S. 1055, 113 S.Ct. 983, 122 L.Ed.2d 136 (holding that actual or constructive denial of counsel on appeal is legally presumed to result in prejudice).

117. *See Moss v. Collins*, 963 F.2d at 48; *Lofton v. Whitley*, 905 F.2d at 887.

118. *See Moss v. Collins*, 963 F.2d at 48; *Lofton v. Whitley*, 905 F.2d at 887.

119. *See Moss v. Collins*, 963 F.2d at 48; *Lofton v. Whitley*, 905 F.2d at 887; *see also Lockhart v. McCotter*, 782 F.2d 1275, 1283 (5th Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987); *Hamilton v. McCotter*, 772 F.2d 171, 181–82 (5th Cir.1985).

120. *See Williams v. Collins*, 16 F.3d at 635 (holding that a federal habeas petitioner's claim of ineffective assistance by appellate counsel failed to satisfy the prejudice prong of *Strickland* where all of the omitted grounds for relief on appeal raised by the petitioner were without merit); *Cantu v. Collins*, 967 F.2d at 1017 (holding that

Constitution does not require appellate counsel to raise every non-frivolous ground that might be pressed on appeal." [121] Appellate counsel is not ineffective solely because of failure to present every ground urged by the defendant.[122] To prevail on a claim of ineffective assistance by appellate counsel, a petitioner must identify with specificity all grounds for relief that he claims should have been included in his appellate brief.[123]

### 3. Only One Point of Error and Poor Quality of Brief

■ Petitioner's first assertion of ineffective assistance by his appellate counsel consists of a conclusory assertion that his appellate counsel raised only a single point of error on direct appeal and inadequately briefed that sole point of error. However, petitioner has identified for this Court absolutely no other potentially meritorious points of error that petitioner alleges his appellate counsel could or should have included as a part of petitioner's appellant's brief.[124] Likewise, petitioner has not identified any additional authorities or theories which his appellate counsel could have cited or argued in support of petitioner's sole point of error on direct appeal and which would have provided the appellate court with a legal or factual basis for reversing petitioner's conviction. As explained above, to prevail on a claim of ineffective assistance by appellate counsel, a petitioner must identify with specificity all grounds for relief that he claims should have been included in his appellate brief.[125] Because petitioner has wholly failed to identify any potentially meritorious points of error which his appellate counsel could have raised on direct appeal and because petitioner has failed to identify any additional authorities or arguments his appellate counsel could have presented in support of petitioner's sole point of error on direct appeal, petitioner's generic complaints about the quality of his appellant's brief do not satisfy the prejudice prong

appellate counsel's failure to present on direct appeal from the state court's judgment certain arguments found by the federal court to be meritless did not prejudice the defendant); *Sharp v. Puckett,* 930 F.2d 450, 452 (5th Cir.1991) (holding that appellate counsel need not present every possible point of error on appeal); *Wicker v. McCotter,* 783 F.2d 487, 497 (5th Cir.), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986) (holding that appellate counsel need not present every possible point of error on appeal).

**121.** *Ellis v. Lynaugh,* 873 F.2d at 840.

**122.** *See Ellis v. Lynaugh,* 873 F.2d at 840; *Wicker v. McCotter,* 783 F.2d at 487; *Hamilton v. McCotter,* 772 F.2d at 182.

**123.** *See Russell v. Lynaugh,* 892 F.2d 1205, 1213 (5th Cir.1989), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2909, 115 L.Ed.2d 1073 (1991) (holding that generalized complaints about the quality of an appellate brief do not satisfy the prejudice prong of the *Strickland* test); *Hamilton v. McCotter,* 772 F.2d at 182.

**124.** Insofar as petitioner's *pro se* pleadings can be construed as asserting that his appellate counsel should have raised a point of error relating to his claims of ineffective assistance by petitioner's trial counsel, for the reasons set forth above in connection with petitioner's analogous claims in this federal habeas corpus proceeding, petitioner was not prejudiced within the meaning of *Strickland* by his appellate counsel's failure to assert ineffective assistance by petitioner's trial counsel

as a point of error on direct appeal. Appellate counsel are not required to present patently frivolous arguments on appeal, or even to present all non-frivolous points that could have been raised. *See Williams v. Collins,* 16 F.3d at 635 (holding that a federal habeas petitioner's claim of ineffective assistance by appellate counsel failed to satisfy the prejudice prong of *Strickland* where all of the omitted grounds for relief on appeal raised by the petitioner were without merit); *Cantu v. Collins,* 967 F.2d at 1017 (holding that appellate counsel's failure to present on direct appeal from the state court's judgment certain arguments found by the federal court to be meritless did not prejudice the defendant); *Sharp v. Puckett,* 930 F.2d at 452 (holding that appellate counsel need not present every possible point of error on appeal); *Wicker v. McCotter,* 783 F.2d at 497 (holding that appellate counsel need not present every possible point of error on appeal). For the same reason, as well as those reasons discussed hereinafter in connection with petitioner's fourth claim for federal habeas corpus relief, petitioner's appellate counsel did not render ineffective assistance by failing to challenge the admissibility of Gloria Luke's in-court identification of petitioner as a part of petitioner's direct appeal. Such a challenge was not properly preserved by a timely objection or motion to suppress at petitioner's trial.

**125.** *See Russell v. Lynaugh,* 892 F.2d at 1213 (holding that generalized complaints about the quality of an appellate brief do not satisfy the prejudice prong of the *Strickland* test); *Hamilton v. McCotter,* 772 F.2d at 182.

of *Strickland*.[126] Petitioner presented the state courts with no more compelling arguments in support of this aspect of his ineffective assistance claims than he has presented to this Court.

For the foregoing reasons, the state courts' rejection on the merits of petitioner's first assertion of ineffective assistance by his appellate counsel was neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts from the evidence. Petitioner's first assertion of ineffective assistance by his appellate counsel does not warrant federal habeas corpus relief.

### 4. *Failure to File a Petition for Discretionary Review*

 In his final assertion of ineffective assistance by his appellate counsel, petitioner complains that his trial counsel failed to file a petition for discretionary review on petitioner's behalf with the Texas Court of Criminal Appeals. The problem with this assertion is that petitioner's Sixth Amendment right to the assistance of counsel terminated when his direct appeal was rejected by the Texas Fourth Court of Appeals. There is no constitutional right to the assistance of counsel in connection with a petition for discretionary review to a state's highest appellate court or to the United States Supreme Court.[127] The constitutional right to counsel extends only through the defendant's first appeal.[128] Thus, any errors committed by

petitioner's appellate counsel in connection with the petitioner's discretionary review proceeding before the Texas Court of Criminal Appeals did not deprive petitioner of any of his federal constitutional rights.[129] Thus, even assuming that petitioner's appellate counsel erroneously failed to file a petition for discretionary review on petitioner's behalf, that failure did not deprive petitioner of any of his federal constitutional rights.

For the foregoing reasons, the state courts' rejection on the merits of petitioner's second assertion of ineffective assistance by his appellate counsel was neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts from the evidence. Petitioner's second assertion of ineffective assistance by his appellate counsel does not warrant federal habeas corpus relief.

### F. *Sufficiency of the Evidence*

 In his third claim for federal habeas corpus relief, petitioner argues that the evidence introduced at his trial was legally insufficient to support the jury's guilty verdict.

 The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[130] The evidence need not exclude ev-

---

**126.** *See Russell v. Lynaugh,* 892 F.2d at 1213; *Hamilton v. McCotter,* 772 F.2d at 182.

**127.** *See Ross v. Moffitt,* 417 U.S. 600, 610–12, 94 S.Ct. 2437, 2443–45, 41 L.Ed.2d 341 (1974).

**128.** *United States v. Whitebird,* 55 F.3d 1007, 1011 (5th Cir.1995) (citing *Coleman v. Thompson,* 501 U.S. 722, 755–57, 111 S.Ct. 2546, 2567–68, 115 L.Ed.2d 640 (1991)).

**129.** *See Wright v. West,* 505 U.S. 277, 292, 112 S.Ct. 2482, 2490, 120 L.Ed.2d 225 (1992); *Murray v. Giarratano,* 492 U.S. 1, 7–12, 109 S.Ct. 2765, 2768–72, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987); *Callins v. Johnson,* 89 F.3d 210, 212 (5th Cir.1996); *Johnson v. Hargett,* 978 F.2d 855, 859 (5th Cir.1992), *cert. denied,* 507 U.S. 1007, 113 S.Ct. 1652, 123 L.Ed.2d 272 (1993); *Santana v. Chandler,* 961 F.2d 514, 515 (5th Cir.1992).

**130.** *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Gilley v. Collins,* 968 F.2d 465, 467 (5th Cir. 1992); *Gibson v. Collins,* 947 F.2d 780, 781–82 (5th Cir.1991), *cert. denied,* 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); *Brown v. Collins,* 937 F.2d 175, 180 (5th Cir.1991); *Guzman v. Lensing,* 934 F.2d 80, 82 (5th Cir.1991); *Schrader v. Whitley,* 904 F.2d 282, 284 (5th Cir.), *cert. denied,* 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990); *Young v. Guste,* 849 F.2d 970, 972 (5th Cir.1988); *Porretto v. Stalder,* 834 F.2d 461, 467 (5th Cir.1987); *Bates v. Blackburn,* 805 F.2d 569, 572–73 n. 2 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987); *Marler v. Blackburn,* 777 F.2d 1007, 1011 (5th Cir.1985); *Parker v. Procunier,* 763 F.2d 665, 666 (5th Cir.), *cert. denied sub nom. Parker v. McCotter,* 474 U.S. 855, 106 S.Ct. 159, 88 L.Ed.2d 132 (1985). This same standard of review applies to a federal defendant's challenge

ery reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.[131] To determine whether the evidence is sufficient to support a state criminal conviction, we must look to state law for the substantive elements of the relevant criminal offense.[132]

When viewed in the light most favorable to the jury's verdict, the evidence introduced at petitioner's trial established that (1) the petitioner drove past the Garcia residence while the two burglars were still inside but then drove away, (2) the petitioner then returned and picked up two burglars, one of whom dragged a pillow case full of stolen property out of the Garcia residence and put it in the get-away vehicle, (3) when police stopped the get-away vehicle less than twenty minutes later, the petitioner erroneously informed the police that the jewelry on the floorboard of the vehicle belonged to his daughter, and (4) when arrested, the petitioner had on his person numerous items of personal property that had been stolen from the Garcia residence, as well as currency that had also been taken from the Garcia residence.

Under applicable Texas law, a person commits the offense of burglary if, without the effective consent of the owner, he enters a building not then open to the public with the intent to commit theft.[133] A person is criminally responsible for an offense committed by another under Texas law if, acting with the intent to promote or assist the commission of the offense, he aids or attempts to aid the other person to commit the offense.[134] Under the Texas theory of parties, a person can be guilty of burglary even though he did not personally enter the burglarized premises if he is acting together with another in the commission of the offense.[135] When viewed in the light most favorable to the verdict, the jury's finding of petitioner's complicity in the burglary is fully supporting by the evidence showing that (1) an eyewitness saw the petitioner pick up the burglars and drive away from the Garcia residence immediately after the burglary, (2) less than twenty minutes later the petitioner was found in personal possession of substantial property stolen from the Garcia residence, and (3) when confronted by police the petitioner falsely claimed that a portion of the stolen property found inside the get-away vehicle belonged to his daughter. From this evidence, the jury rationally could have concluded that the petitioner had intentionally and knowingly aided and abetted the commission of the burglary.

■ Petitioner argues that the evidence of his criminal intent was circumstantial, at best. It is true that the petitioner did not admit to having participated in the burglary or to having intentionally or knowingly aided and abetted same. However, either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.[136] The jury was free to rationally

to the sufficiency of the evidence supporting a federal criminal conviction. See *United States v. Leahy*, 82 F.3d 624, 633 (5th Cir.1996); *United States v. Salazar*, 66 F.3d 723, 728 (5th Cir.1995); *United States v. Crawford*, 52 F.3d 1303, 1309 (5th Cir.1995); *United States v. Harris*, 932 F.2d 1529, 1533 (5th Cir.), *cert. denied*, 502 U.S. 897, 112 S.Ct. 270, 116 L.Ed.2d 223 (1991); *United States v. Blankenship*, 923 F.2d 1110, 1114 (5th Cir.), *cert. denied*, 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991); *United States v. Molinar–Apodaca*, 889 F.2d 1417 (5th Cir.1989).

**131.** *United States v. Ismoila*, 100 F.3d 380, 386 (5th Cir.1996); *United States v. Leahy*, 82 F.3d at 633; *United States v. Salazar*, 66 F.3d at 728; *United States v. Crawford*, 52 F.3d at 1309; *United States v. Faulkner*, 17 F.3d 745, 768 (5th Cir.), *cert. denied*, 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994); *United States v. Pigrum*, 922 F.2d 249, 254 (5th Cir.), *cert. denied*, 500 U.S. 936, 111 S.Ct. 2064, 114 L.Ed.2d 468 (1991).

**132.** *See Jackson v. Virginia*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Brown v. Collins*, 937 F.2d at 181; *Isham v. Collins*, 905 F.2d 67, 69 (5th Cir.1990); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985); *Turner v. McKaskle*, 721 F.2d 999, 1001 (5th Cir.1983).

**133.** *See* Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 1994).

**134.** *See* Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 1994).

**135.** *See Wilkerson v. State*, 874 S.W.2d 127, 129 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

**136.** *Schrader v. Whitley*, 904 F.2d at 287; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir.1979); *see also Jackson v. Virginia*, 443 U.S. at 324–26, 99 S.Ct. at 2791–93 (holding that circumstantial evidence alone can support a finding as to an

infer petitioner's culpable mental state from the evidence of his overt actions in aid of the burglary.

 Petitioner argues that the testimony most damaging to him at his trial, set forth above, was given by an inherently suspect witness, i.e., Gloria Luke. More specifically, petitioner argues that Mrs. Luke's identification of him as the driver of the get-away vehicle was incredible because Mrs. Luke was located at too great a distance to have been able to adequately identify petitioner as the driver. However, this argument is a direct challenge to the credibility of that witness. A federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts.[137] All credibility choices must be resolved in favor of the jury's verdict.[138]

As explained above, the evidence against petitioner was not only sufficient, it was overwhelming. For the foregoing reasons, the state courts' rejection of petitioner's insufficient evidence claim was neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts from the evidence. Therefore, petitioner's third claim does not warrant federal habeas corpus relief.

### G. Tainted In–Court Identification

In his supplemental pleading filed September 26, 1996, petitioner argues for the first time that Gloria Luke's in-court identification of petitioner as the driver of the get-away vehicle was tainted because less than twenty minutes after she observed the burglars drive away from the Garcia residence, Sequin Police took Mrs. Luke to a confrontation at the scene where the police had stopped the green, two-tone vehicle that had served as the get-away vehicle for the burglars and Mrs. Luke saw petitioner at that location.

 "A conviction violates due process and must be set aside if a witness bases an in-court identification on a pretrial photographic identification procedure that is 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' "[139] The admissibility of identification evidence is governed by a two-step analysis: (1) whether the identification procedure was impermissibly suggestive; and, if so, (2) whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.[140] Assuming that the defendant can establish that the identification procedure was impermissibly suggestive, that fact does not end the inquiry into the constitutionality of the admission of Gloria Luke's subsequent in-court identification. Suggestive out-of-court identifications are not per se subject to exclusion; they are admissible if,

essential element of an offense); *Gibson v. Collins,* 947 F.2d at 783–86 (holding that it is not necessary that the evidence exclude every hypothesis of innocence and that a jury is free to choose among reasonable constructions of the evidence); *United States v. Harris,* 932 F.2d at 1533 (holding that it is not necessary that the evidence exclude every hypothesis of innocence and that a jury is free to choose among reasonable constructions of the evidence).

**137.** See *Marler v. Blackburn,* 777 F.2d at 1012; *Dunn v. Maggio,* 712 F.2d 998, 1001 (5th Cir. 1983), *cert. denied,* 465 U.S. 1031, 104 S.Ct. 1297, 79 L.Ed.2d 697 (1984); see *also United States v. Payne,* 99 F.3d 1273, 1278 (5th Cir. 1996), *United States v. Polk,* 56 F.3d 613, 620 (5th Cir.1995); *United States v. Bermea,* 30 F.3d 1539, 1552 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1825, 131 L.Ed.2d 746 (1995) (these cases all holding that non-credibility is generally not a sound basis for alleging insufficiency of the evidence; it is the jury's function to determine credibility); *United States v. Salazar,*

66 F.3d at 728 (holding that jury is free to choose among reasonable constructions of the evidence); *United States v. Harris,* 932 F.2d at 1533 (holding that all inferences and credibility choices must be made in the light most favorable to the Government).

**138.** *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir.1994).

**139.** *Young v. Herring,* 938 F.2d 543, 550 (5th Cir.1991), *cert. denied,* 503 U.S. 940, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)).

**140.** See *Peters v. Whitley,* 942 F.2d 937, 939 (5th Cir.1991) *cert. denied,* 502 U.S. 1113, 112 S.Ct. 1220, 117 L.Ed.2d 457 (1992); *Herrera v. Collins,* 904 F.2d 944, 946 (5th Cir.), *cert. denied,* 498 U.S. 925, 111 S.Ct. 307, 112 L.Ed.2d 260 (1990); *United States v. Shaw,* 894 F.2d 689, 692–93 (5th Cir.), *cert. denied,* 498 U.S. 828, 111 S.Ct. 85, 112 L.Ed.2d 57 (1990).

under the totality of the circumstances, they are sufficiently reliable.[141] Factors to be considered in determining whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness' description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, (5) the length of time between the crime and the confrontation, and (6) the corrupting influence of the suggestive identification itself.[142]

■ The first problem with petitioner's claim that his in-court identification was tainted by the fact that police took Gloria Luke to the place where the police had stopped the two-tone green get-away vehicle is the fact that the petitioner has not alleged any specific facts establishing that this "show up" was conducted in a manner that was impermissibly suggestive. While the petitioner was standing beside the get-away vehicle along with the person whom Gloria Luke had seen dragging a pillow case from the Garcia residence just twenty minutes before, petitioner has not alleged that the police said or did anything that was impermissibly suggestive. For instance, petitioner does not allege that the police suggested or implied to Mrs. Luke that they had the burglars in custody prior to her arrival at the location where the police had stopped the two-tone

get-away vehicle. Likewise, petitioner has not alleged that he was in handcuffs at the time of the "show up" or that anything was said or done by the police to suggest or imply to Mrs. Luke that the police believed the petitioner was involved in the burglary. Not every confrontation between an eyewitness and a suspect is inherently suggestive.[143] Because petitioner has failed to identify any aspect of the "show up" that was impermissibly suggestive, he is not entitled to federal habeas corpus relief based upon his global and unsupported claim of suggestiveness.[144]

Second, the petitioner argues, incorrectly, that Mrs. Luke did not identify him at the scene where the two-tone get-away car had been stopped. However, the testimony at trial established that Gloria Luke did, in fact, identify the petitioner as the driver of the get-away vehicle when she confronted him shortly after the burglary.[145]

■ Finally, assuming arguendo that taking an eyewitness to the location where a pair of suspects have been detained for the purpose of permitting an identification is somehow inherently suggestive, petitioner has alleged absolutely no facts establishing that the "show up" rendered Mrs. Luke's subsequent in-court identification of petitioner unreliable under the factors listed above. On the contrary, the evidence elicited during petitioner's trial established that (1) Gloria Luke had the opportunity to view the petitioner twice, once when he drove up to and then away from the Garcia residence and

**141.** *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir.), *cert. denied*, 510 U.S. 878, 114 S.Ct. 217, 126 L.Ed.2d 173 (1993); *McFadden v. Cabana*, 851 F.2d 784, 789–90 (5th Cir.1988), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989); *Dispensa v. Lynaugh*, 847 F.2d 211, 218–19 (5th Cir.1988).

**142.** *See Manson v. Brathwaite*, 432 U.S. at 114–16, 97 S.Ct. at 2253–54; *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *United States v. Sanchez*, 988 F.2d at 1389; *Smith v. Puckett*, 907 F.2d 581, 583 (5th Cir.1990), *cert. denied*, 498 U.S. 1033, 111 S.Ct. 694, 112 L.Ed.2d 685 (1991); *Herrera v. Collins*, 904 F.2d at 947; *United States v. Shaw*, 894 F.2d at 692–93; *United States v. Merkt*, 794 F.2d 950, 958 (5th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).

**143.** *See Thompson v. State of Mississippi*, 914 F.2d 736, 739 (5th Cir.1990), *cert. denied*, 498 U.S. 1124, 111 S.Ct. 1083, 112 L.Ed.2d 1187 (1991) (holding that a witness's observation of a suspect while the suspect was confined in jail was not inherently suggestive).

**144.** *See Livingston v. Johnson*, 107 F.3d 297, 301 (5th Cir. 1997) (holding that a show up was not unconstitutional in the absence of any facts showing that law enforcement officers encouraged the identification at the show up); *Young v. Herring*, 938 F.2d at 550; *Frank v. Blackburn*, 605 F.2d 910, 912 (5th Cir.1979).

**145.** *See* S.F. Trial, Testimony of Gloria Luke, at pp. 50–51 and 54–57; and Testimony of Gilbert Soliz, at pp. 78–79.

then a second time when he came back and actually picked up the two burglars, (2) she focused her attention on the burglars and driver of the get-away vehicle because she suspected a crime was in progress, (3) she was never placed in physical danger, (4) she immediately reported her observations to the police, (5) based on her description of the get-away vehicle, the police were able to stop that vehicle less than twenty minutes later while it still contained property stolen from the Garcia residence, and (6) upon seeing the vehicle and its occupants, Mrs. Luke immediately identified the vehicle and the driver of the vehicle as the person whom she had seen dragging a filled pillow case from the Garcia residence and also identified petitioner as the person whom she had seen driving the get-away vehicle away from the Garcia residence.[146] Petitioner has not alleged any facts establishing that any of the information given to them by Mrs. Luke prior to her confrontation of the petitioner and based upon her observations of the burglars, the get-away vehicle, or the driver of the get-away vehicle was in any way inaccurate. Moreover, insofar as the most inculpatory aspects of Mrs. Luke's trial testimony are concerned, the Castillo affidavit corroborates her description of the get-away vehicle and her identification of Castillo as the person whom she saw dragging a pillow case full of stuff from the Garcia residence. Under such circumstances, there was no viable legal basis for excluding the testimony of eyewitness Gloria Luke from petitioner's trial.[147] Therefore, the petitioner's complaints about Mrs. Luke's allegedly "tainted" identification of him do not warrant federal habeas corpus relief.[148]

For the foregoing reasons, petitioner's complaints of a "tainted" in-court identification do not warrant federal habeas corpus relief.

### Conclusions

Petitioner has presented this Court with several unexhausted claims and at least one piece of evidence, i.e., the Castillo affidavit, that has never been presented to any state court. Even though petitioner's claims for relief are wholly without merit, the principles of comity and federalism which underlie the exhaustion doctrine will not be offended by this Court addressing petitioner's unexhausted claims and new evidence. Petitioner's claims for federal habeas relief are precluded

---

146. *Id.*

147. *See United States v. Zolicoffer,* 92 F.3d 512, 515–16 (7th Cir.1996) (holding that the trial court properly admitted an eyewitness identification of the driver of a get-away car in a robbery where the eyewitness had a clear view of the driver for six-to-fifteen seconds, the circumstances led the eyewitness to believe that a crime was being committed and thus focused the attention of the eyewitness, the eyewitness was taken by police to a location where the driver of the get-away vehicle had been stopped less than an hour after the robbery, and the driver of the get-away vehicle was displayed for the eyewitness while wearing handcuffs). The facts in *Zolicoffer* are remarkably similar to those in petitioner's case except that Gloria Luke probably got a better look at the petitioner than did the eyewitness in *Zolicoffer,* and Gloria Luke was taken to the "show up" with the petitioner much sooner after the events she had witnessed than the eyewitness in *Zolicoffer.* Thus, the case for the admission of Gloria Luke's eyewitness identification of the petitioner was even stronger than that offered in *Zolicoffer.*

148. Insofar as petitioner's *pro se* pleadings can be construed as asserting an ineffective assis-tance claim based on the failure of petitioner's trial counsel to move to suppress the allegedly "tainted" Luke identification, that claim fails because, for the reasons explained above, there is no reasonable probability that such a motion to suppress would have prevailed. Mrs. Luke's in-court identification of petitioner as the driver of the get-away vehicle was corroborated by other trial evidence and is also corroborated by the Castillo affidavit furnished to this Court by petitioner. Petitioner has not identified any improperly suggestive aspects to the "show up" in question and that show up did not render Mrs. Luke's identification of the petitioner unreliable. Moreover, because no timely objection or motion to suppress was ever made at trial to the admission of Gloria Luke's testimony, there is no reasonable probability that the Texas appellate courts would even have addressed the merits of such a claim had it been raised as a part of petitioner's direct appeal. The Fifth Circuit has repeatedly recognized the efficacy of the Texas contemporaneous objection rule as a barrier to review of alleged trial errors. *See Rogers v. Scott,* 70 F.3d 340, 342 (5th Cir.1995), *cert. denied,* ── U.S. ──, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996); *Nichols v. Scott,* 69 F.3d 1255, 1278 n. 44 (5th Cir.1995), *cert. denied,* ── U.S. ──, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); *Amos v. State,* 61 F.3d at 338–45.

**930**

by operative law, the findings made by the state habeas court, or both. Likewise, the state courts' rejection of petitioner's claims for habeas relief was the product of neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts from the evidence presented to those courts. For the foregoing reasons, none of the petitioner's claims for federal habeas corpus relief warrant same.

Accordingly, it is hereby **ORDERED** that:

1. The referral of this cause to the Magistrate Judge is **WITHDRAWN.**

2. All of the petitioner's claims for federal habeas corpus relief[149] in this cause are **DENIED.**

3. All other pending motions are **DISMISSED AS MOOT.**

4. The Clerk shall prepare and enter a Judgment consistent with this Memorandum Opinion and Order.

---

**149.** *See* docket entry nos. 3 and 9.